# Costello v. The State.
# Stathakis v. The State.
# Papalexandrakis v. The State.

*Indictment for Maintaining a Public Nuisance.*

| 108 | 45 |
| 124 | 139 |
| 124 | 166 |
| 124 | 167 |
| 124 | 170 |
| 108 | 45 |
| 133 | 472 |
| 133 | 473 |
| 108 | 45 |
| 144 | 466 |
| 144 | 468 |

1. *Public nuisance; obstruction of streets; rights of the public over public highways.*—Any permanent obstruction to a public highway, such as the erection of a fruit stand on the sidewalk of a city, is of itself a nuisance, as matter of law, irrespective of any actual inconvenience to the public. The public having the right of passage over a street, to its utmost extent, unobstructed by any impediments, the law presumes inconvenience and injury to the public from the erection and maintenance of any unlawful obstruction.

2. *Same; temporary obstructions to streets; when not illegal.*—It is not every obstruction to a highway, although it works inconvenience to the public, that is illegal. The necessities of trade; the placing of building material; the moving of buildings, may cause a highway to be obstructed to the inconvenience of the public, but such obstructions are not illegal *per se*, and only become so from unnecessary delay in their removal, and as to such obstructions the question of nuisance *vel non* is for the jury.

3. *Same; a city has no right to authorize a public nuisance.*—The fact that a city issues a license to a person to carry on business in a structure on the public highway, which of itself is a public nuisance, is no defense to an indictment for the maintenance of a public nuisance.

APPEALS from Jefferson Criminal Court.

Tried before Hon. S. E. GREENE.

These were three several appeals, but were argued and submitted together, and the facts in each are substantially the same, and sufficiently appear in the opinion. The court below, in each case, gave the general affirmative charge in favor of the State, the same being requested in writing, and the giving of this charge is assigned as error.

WALKER, PORTER & WALKER, for appellants.—It is not sufficient to authorize a conviction for maintaining a public nuisance, to merely prove that the defendant occupied a part of the sidewalk or public highway. The

[Costello v. The State; Stathakis v. The State; Papalexandrakis v. The State.]

State has to go further and show that there has been some embarrassment, inconvenience, annoyance, damage or injury to the public.—Blackstone's Com., Book 3, p. 216; *Id.* Book 4, p. 167; Woods Law of Nuisances, sections 17, 18; *People v. Carpenter,* 1 Mich. Rep. 273; *Clark v. L. St. C. & N. U. R. I. Co.,* 24 Mich. 508; *Everett v. City of M. et al.,* 53 Mich. 450; *Everett v. City of C. B.,* 46 Iowa, 66; *Harrison County Court v. Wall,* 12 S. W. Rep., 130; *City of Newport v. Miller,* 18 S. W. Rep., 835; *City of Allegheny v. Zimmerman,* 40 Am. Rep., 649.

W. C. FITTS, Attorney-General, and R. L. THORNTON, for the State.—Any habitual or permanent structure, which materially encroaches upon a public highway, rendering it less commodious for public travel, is a nuisance *per se,* and an indictable offense, though sufficient space is left for the passage of the public.

English authorities.—3 Bac. Abridg., 497; 2 Russ. on Crimes, 461; 4th Bl. Com., 167; *Regina v. Watson.* 2 Ld. Raym., 856; *Reg. v. U. K. Tel. Co.,* 31 L. M. C., 167; *King v. Wright,* 3 B. & Ad., 881; *Queen v. Batts,* 16 Q. B., 1022; *King v. Russell,* 6 East., 427; *Rex v. Jones,* 3 Comp., 230; *Rex v. Ward,* 4 Ad. & E.. 384.

American authorities.—Woods' Law of Nuisances, §§ 252-8 and §§ 262-7, 273, and authorities cited; Elliots Roads and Streets, pp. 477-8; *Smith et al. v. McDowell,* 148 Ill. 51; *State v. Burdette,* 73 Ind. 185; *People v. Cunningham,* 1 Denio, 524; *People v. Vanderbilt,* 26 N. Y. 287; s. c. 28 N. Y. 396; *Davis v. Mayer,* 14 N. Y. 506; *Pettis v. Johnson,* 56 Ind. 139; *Com. v. King,* 13 Metcalf, 115; *Com. v. Blaisdell,* 107 Mass. 234; *Com. v. Wentworth,,* 1 Brightly N. P., 318; *Mayamensing v. Long,* 1 Par. (Pa.) 143; 1 Dallas, 450; *State v. Edens,* 85 N. C. 526; 46 Maine, 483; *Harrold v. State,* 1 Greene (Iowa) 439; *Chamberlain v. Edgefield,* 43 N. H. 356; *Mulhumes v. Cleveland.,* 2d Cleveland Rep. 236; *Hotel Co. v. Branchan,* 7 Ball, 57; *State v. Hardin,* 1 Crim. L. M., 419; *State v. Ramsey,* 76 Mo. 398.

*Alabama Cases.*—Clark's Manual, § 1750; *State v. Mobile,* 5 Port., 279; 22 Ala. 190-4; *Demopolis v. Webb,* 87 Ala. 659; *Webb v. Demopolis,* 95 Ala. 116; *City Council of Montgomery v. Wright,* 72 Ala. 420; *Mayor and Aldermen of Birmingham v. Lewis,* 92 Ala. 352; *Bradford v. Anniston,* 92 Ala. 349; *Hubbard v. Concord,* 69 Am. Dec., 520.

HEAD, J.—These are three several cases, being criminal prosecutions, one against each of the appellants, for erecting or maintaining a public nuisance, in the city of Birmingham. The charge against each, as set forth in the complaint is, that, in a part of a designated public highway, within the corporate limits of said city, in the county of Jefferson, State of Alabama, he did, knowingly, intentionally, and unlawfully, erect, keep or maintain, for the purpose ·of doing business, a certain fruit stand, by reason whereof said highway, or a portion thereof, was obstructed and made less convenient, to the great damage and common nuisance, not only of all the inhabitants of said city, but to all other good citizens of said State there passing and repassing and laboring. The undisputed evidence showed that Costello, for a year next before the commencement of the prosecution, kept and maintained a fruit stand, constructed of timber and lumber, so arranged as to display fruits &c. for the purpose of doing business. It was situated on the inside portion of the side-walk on 20th street, in said city, between First and Morris Avenues, and next to,and along by the side of, a four-story brick storehouse. It was 31 feet long, 3 feet and 8 inches wide, being 2 feet high at the lower or outer edge, and rising, as it receded in width towards the storehouse, to a height of 4 feet next to, and adjoining, the storehouse; the width at the top, and next to the storehouse, being one foot. Prior to the erection of this stand, there was in the sidewalk, next to the building, an open way leading to a room or cellar under the building; and, in October, 1894, Costello covered this opening and erected the fruit stand thereon, the stand occupying only the surface space occupied by the cover to the opening. The opening was made by the owners of the storehouse, in the year 1887, and remained there until covered by Costello; the city authorities never having objected to it. The cellar or room to which it afforded entrance, has not been used since the opening was covered. Costello kept the stand, under a lease from the owners of the building. By city ordinance, a license tax of $20 per annum, was imposed upon the business of keeping a fruit stand on a sidewalk of the city, which license had been taken out, and tax paid by appellants, for the time covered by the complaints. Birmingham, during the time, in question,

was a city of 26,500 population; and 20th street was, and had been for many years, a public street or highway therein, and the place where the stand, in question, was kept, "is in the most populous portion of a part of the business portion of said city, and said 20th street and said sidewalk are as much traveled as any other street in said city, and said sidewalk is a part of said highway." The sidewalks were 15 feet wide. So far as the legal questions presented by the records are concerned, there is no material difference in the facts of the several cases. There are slight differences in the dimensions of the stands; two are for fruits and one for candies and confections. They are located at different places in the city, but all on important and commonly used public sidewalks of the city, and they take up, practically, the same sidewalk space, and in the same manner. There was no cellar opening in the two other cases.

Here, then, we have, in either case, the undisputed fact, that, at least, three and one-half feet of the fifteen feet of sidewalk (nearly one-fourth) and nearly 30 feet of its length, were exclusively and permanently appropriated by the defendant to his private uses, to the entire deprivation of the public of the space so appropriated. And to this must be added, as a necessary legal inference, from the fact that these stands were used for carrying on the business of selling fruits, &c., the permanent occupation of the sidewalk by the person or persons engaged in making the sales; and by the standing thereon, from time to time, day by day, of customers trading at such stands. The trial court was of opinion that these facts, of themselves, constituted, as matter of law, public nuisances, indictable as such, without requiring the prosecutor (as then and now contended for by the appellants' counsel) to go further and prove that such erections actually incommoded the general public. It seems to us that the statement of the case necessarily precludes any other conclusion. It is not and cannot be denied that the public has the right to the use of the entire sidewalk for the purpose of passage and other public purposes; that the appellants have, without lawful authority, permanently appropriated to their own exclusive use and enjoyment, material portions of the sidewalks, in question, thereby wholly depriving the public of the use of such portions. An unlawful deprivation

of a substantial legal right necessarily implies injury to the party so deprived; and it is so with reference to the right of the public to the free use of the streets. When it is established that a party has, permanently and unlawfully, obstructed a material portion of a public street, which the public have a right to use, and but for the obstruction, would use, for public purposes, it is thereby concluded that the public have been injured and put to inconvenience by reason of the obstruction; and this constitutes, in law, an indictable nuisance. Mr. Freeman tersely states the law, as extracted from the numerous authorities he cites, in his extended annotation of *Callanan v. Gilman*, 1 Am. St. Rep. 840, as follows: ''The public have a right to passage over a street, to its utmost extent, unobstructed by any impediments. And any unauthorized obstruction which necessarily impedes the lawful use of a highway is a public nuisance at common law.'' And Judge Ruffin, a distinguished jurist, said, in *State v. Edens*, 85 N. C. 526: "Any permanent obstruction to a public highway, such as would be caused by the erection of a fence or building thereon is, of itself, a nuisance, though it should not operate as an actual obstacle to travel, or work a positive inconvenience to any one. It is an encroachment upon a public right, and as such is not permitted by the law to be done with impunity.''

Confusion of ideas upon this subject grows out of the failure to properly distinguish between street obstructions which are *per se* unlawful and capable of working public detriment, and those which are not, in themselves, unlawful, but may be so, by virtue of circumstances necessary to be shown in evidence, in order to establish the criminality of the act. There are classes of highway obstructions which may create public inconvenience and yet are not unlawful. Mr. Freeman, also, makes these to appear very clearly. After laying down the principle above credited to him, he proceeds, in the same annotation, to say: ''Temporary obstruction and partial occupation of streets may, however, be justified on the ground of necessity. The street may be obstructed by placing thereon materials for building or repairing, if it be done in such a way as to occasion the least inconvenience to the public, and the obstruction be not continued

for an unreasonable length of time. So, too, a private person carrying on business may occupy a portion of the street for a reasonable length of time for the necessary purpose of receiving and delivering his goods. A street may also be used for the purpose of moving a building from one place to another, provided it be done in a reasonable and judicious manner. Streets may be lawfully used for other purposeses than the accommodation of the traveling public, provided such use be not inconsistent with the reasonably free passage of travelers over them. Slight inconveniences and occasional interruptions in the use of a street, which are temporary and reasonable, are not illegal merely because the public may not, for the time being, have the full use of the highway. * * * * If a person finds it necessary to obstruct a public street, he must see to it that the inconvenience to the travelling public be as slight as possible, and that it be allowed to continue for a reasonable time only. And a reasonable time is such as is necessary, in the ordinary course of business, for its removal. A teamster has no right to keep his team standing in the street in such a manner as to impede travel for an unnecessary length of time. If his wagon breaks down and he is compelled to throw his goods upon the street, he must remove them out of the way in a reasonable time. A tradesman has no right to deposit his goods and wares on the street for the purpose of exposing them for sale. An individual has no right to appropriate a part of the street to his exclusive use in carrying on his business, even though enough space be left for the passage of the public. Nor has a storekeeper any right to use the sidewalk in front of his store as a sort of annex to his place of business. If a man's premises are not sufficiently extensive for the transaction of his business, without encroaching upon the street or sidewalk, he is bound to seek more spacious quarters elsewhere. The public convenience is paramount to the necessities of private individuals." No doubt the habitual and constant occupation of a material portion of the sidewalk for displaying goods for sale, which would naturally interfere with public passage, would be declared a nuisance *per se.*

Speaking of permanent structures he says : "Permanent structures obstructing streets and interfering with

their unimpeded use by the public are nuisances, which
may be abated, although there be space left for the pas-
sage of the public.   The following are instances of such
structures, held to be nuisances :. A barn occupying
nearly half the street in a populous village ; a show case
in front of a store extending beyond the house line ; a
bay    window    sixteen    feet    above    the    sidewalk,
and projecting three and a half feet over the sidewalk ;
a bridge extending across a street from the second story
of a building on one side of the street to the second story
of a building on the opposite side (supported by the
buildings and being 13 feet and 3 inches above ground) ;
a hay scale in the street in front of the owner's prem-
ises ; a fruit stand encroaching upon the sidewalk ; a
show board extending eleven and a half inches over the
sidewalk in front of a shop ; a wooden awning in front of
a store extending over the sidewalk.   But in *Hawkins v.
Sanders*, 45 Mich. 491, it was held that such an awning
was not *per se* a nuisance.   So, too, in *Osborn v. Union
Ferry Co*. 53 Barb. 629, it was held that a log of wood
placed by the defendant in the public street, at the thres-
hold of its gate, was a nuisance." Mr. Freeman col-
lects and cites a great array of authorities in support of
the principles he lays down.   We have read the most of
them, as well as a number of others, and they establish
to our entire satisfaction that obstructions of the kind,
in the present cases, are *per sese* nuisances.   Being, in
themselves, without more, unlawful infringements of
the public right to have the free use of the whole of the
streets, which includes the sidewalks, for the purposes
for which the streets were dedicated or established, they
are, without more, conclusive of public injury.   In such
cases, evidence would not be admitted that public injury
did not result.   Such evidence, beyond what the acts
themselves manifest, would consist in the opinions of
witnesses merely.   One jury might accord such weight
to such opinions as to result in conviction, another in
acquittal, when the acts are, without dispute, identical
and unlawful, and the legal consequences of both are
necessarily the same.   It would be a very discordant
administration of justice to have Costello convicted and
Stathakis acquitted, when both have, without question,
committed the very same unlawful acts, with the same

consequences, merely because one jury viewed the opinions of men, as to the consequences, one way, and another jury, the other way. Inasmuch as the law, upon the undisputed facts, declares both the nature of the act and its consequences, such opinions will not be received.

The rule is different where one is charged with an improper and detrimental exercise of his public right to use the street. Thus, for instance, as we have seen, a merchant has the right to use the street for receiving and delivering his goods, but he must do so in a reasonable and proper manner—in a manner that will not unreasonably impede public travel. The act of using the street for such purposes is not, in itself, unlawful. The unlawfulness of the act consists in the unreasonable manner of its performance, producing unnecessary public inconvenience. These are the elements which give the character of wrong to the act otherwise right, and they must be proven; in order to establish the criminal offense. Indeed, it is not so much the improper manner of exercising the right, which constitutes the criminal offense, as the inconvenience to the public which results from that manner. Judge Ruffin, in his opinion referred to *supra*, after stating the principle we quoted, in reference to permanent structures, drew the distinction between the two classes of cases, as follows : "But the very object of a highway is that it may be used, and though travel be its primary use, it still may be put to other reasonable uses ; and whether a particular use of it, which does not of itself amount to a nuisance, is reasonable or not, is a question of fact to be judged of by the jury acording to the circumstances of the case. Unlike the case of a permanent obstruction just referred to, it is not the manner of using the highway which constitutes the nuisance, but the inconvenience to the public which proceeds from it, and unless such inconvenience really be its consequence, there is no offense committed." Nothing can better settle the principle than this emanation from so distinguished a judge.

Our own adjudications support our conclusion.— *State v. Mobile*, 5 Port. 279 ; *Hoole v. Att'y-Gen'l*, 22 Ala. 190 ; *City Council of Montgomery v. Wright*, 72 Ala. 411,; *Webb v. Demopolis*, 95 Ala. 116.

The following are also some of the many authorities,

upon the questions here raised :—*Hart v. Mayor &c.* 9 Wend. 571 (24 Am. Dec. 165); *Rung v. Shoneberger*, 2 Watts, 23, (26 Am. Dec. 95) ; *Com. v. Wilkinson*, 16 Pick. 175, (26 Am. Dec 654) ; *People v. Cunningham*, 1 Denio, 524, (43 Am. Dec. 709); *Johnson v. Whitefield*, 18 Me. 286, (36 Am. Dec. 721) ; *Graves v. Shattuck*, 35 N. H. 257 (69 Am. Dec. 536) ; *State v. Berdetta*, 73 Ind. 185, (38 Am. Rep. 117)—a case of a fruit stand like the present ; *City of Allagany v. Zimmerman*, 95 Pa. St. 287, (40 Am. Rep. 649) ; *Reimer's Appeal*, 100 Pa. St. 182, 45 Am. Rep. 373) ; *Bybee v. State*, 94 Ind. 443, (48 Am. Rep.. 175 ; *Smith v. Simmons*, 103 Pa. St. 32, (49 Am. Rep. 113) ; *Callanan v. Gilman*, 107 N. Y. 360, (1 Am. St. Rep. 831; *Yates v. Town of Warrenton*, 84 Va. 337, (10 a. m. St Rep. 860).; *Cohen v. New York*, 113 N. Y. 532, (10 Am. St. Rep. 506 & note). Desty, in his work on criminal law, states, that front steps are part of the building, and when they project, the building is in the highway, and such structure is a nuisance at common law ; citing *Com. v. Blaisdell*, 107 Mass, 235 ; *Hyde v. Middlesex* 2 Gray, 267. Also, a stall for the sale of fruits and confectioneries placed on a public foot-way is a nuisance, though rent be paid to the adjoining owner ; citing *Com. v. Wentworth*, 4 Clark (Pa.) 324.

The fact that Costello's stand was erected on the covering of the open way to the cellar is of no importance. —*Com. v. Wilkinson, supra.*

It is not contended that the city authorities have any general power to permit or license obstructions of streets, otherwise unlawful. See *Webb v. Demopolis, supra* ; *Cohen v. New York, supra.* The authorities generally are against such power. The charter of Birmingham does not confer it. Its provisions in regard to streets look to the betterment of the streets for the public purposes for which they were dedicated or acquired. They do not empower the city to permit the streets to be diverted from their public use to private purposes, by suffering individuals to obstruct and appropriate them. Such a thought was never in the legislative mind.

We are of opinion the judgments of the criminal court were right, and they are affirmed.