Summers, J.
The city of Cincinnati by ordinance granted permission to The Cincinnati Traction Company and The Cincinnati Street Railway *337 Company to construct and maintain across Eastern avenue in the city, a bridge for the purpose of connecting the property of the companies upon the north side of the avenue with the property of the companies on the south side of said avenue, in order that coal might be carried from their elevator on the north side of the avenue to their power house on the south side of said avenue.
The plaintiff in error, Edwin E. Kellogg, filed a petition for an injunction against the city and the two companies. He avers that he is a taxpayer of the city and brings the action on behalf of the city and- that he, in writing, duly requested the city solicitor to bring the action, and that he refused to do so. He avers that the city by ordinance granted permission to the companies to construct, the bridge. He avers that Eastern avenue is one of the principal thoroughfares of the city, and that the companies threaten to erect and maintain the bridge, and he avers that the ordinance is invalid for the reason that the city did not have authority to make the grant, and that the erection of the bridge will result in the execution and performance of a contract made in behalf of the corporation, contrary to law, and will be an abuse of the corporate power of the city.
• The city answers admitting the facts stated in the petition, it sets out a copy of the ordinance and denies that it is a contract, or its enactment an abuse of the corporate power of the city.
The answer of the companies is as follows:
“The Cincinnati Traction Company and The Cincinnati Street Railway Company, defendants, admit that the city of Cincinnati is a municipal corporation, that these answering defendants are *338 corporations, and that the plaintiff, Edwin E. Kellogg, is a taxpayer and that he requested the city solicitor in writing and the latter refused such request as alleged. They further admit that the city of Cincinnati, on April 27, 1908, passed the ordinance the title to which is set forth in the petition; that it is their intent tp construct and maintain a bridge for coal purposes across Eastern avenue from their property on the north side of said avenue to their property on the south side thereof in accordance with the terms and provisions of said ordinance, except that the height of said bridge above the surface of Eastern avenue will be greater than the minimum height prescribed by the ordinance, that is to say, the bridge proposed is to be about ten (10) feet in width, with a clear span across said avenue and located so that the center line of the bridge on the north line of said avenue shall be about one hundred and fifty-one (151) feet west of the west line of St. Andrew street, measured along the north line of Eastern avenue, and that the center of said bridge at the south line of Eastern avenue is to be about the same distance west of the west line of St. Andrew street, measured along the south line of said Eastern avenue; and said defendants deny each and every other allegation in said petition contained.
“The defendants further aver that The Cincinnati Street Railway Company owns the fee and The Cincinnati Traction Company is the lessee of said owner and has a leasehold estate in the properties located on the north side and the south side of said Eastern avenue and so to be connected by means of said proposed bridge, together with an elevator at the north end of the bridge for lifting coal from *339 railroad cars to the level of the bridge; that the total frontage of the property so located on the north side of Eastern avenue is two hundred,and twenty-seven and sixty-one one-hundredths (227.61) feet; that the total frontage of said property located on the south side of Eastern avenue is three hundred and seventy-six and fifty one-hundredths (376.50) feet; that the bridge as authorized is designed to be and will be constructed and maintained along a line at right angles to the center line of Eastern avenue and at the sole cost and expense of these defendant companies; that the distances on both sides of Eastern avenue between the eastern boundaries of the properties aforesaid of these defend-' ants and the center of said proposed bridge are about one hundred and fifty-one (151) feet, as hereinbefore stated; that the distance between the center of said bridge as proposed on the north side of Eastern avenue and the' west boundary of the said property located on the same side of Eastern avenue is about seventy-five (75) feet; that the distance between the bridge as proposed on the south side of Eastern avenue and the west boundary of the said property on the same side of the avenue is about two hundred and twenty-five (225) feet; that the plan of the proposed bridge has been completed and the bottom line of the truss construction supporting the same is to be twenty-eight and eighty-three one-hundredths (28.83) feet above the rails of the street railway tracks located at that point in said Eastern avenue, and the bridge will be constructed and maintained with a clearance of that height throughout the width of said avenue; that said proposed bridge can not and will not interfere in any respect whatever with the light *340 and air of any property or structure of any owner or holder of property situated on either side of said avenue; that the said bridge is designed to be and will be constructed and maintained so that no part of the structure will rest in any portion of Eastern avenue, its supports being designed to be and will be placed wholly upon the property of these defendants; that the materials with which the bridge is to be constructed are of the most substantial, modern and durable steel work, thoroughly fire proof in all parts both as to supports and span, including also the floor, sides and roof of the bridge and all its connections, and its construction will be of such a character and the structure will be so enclosed as absolutely to prevent any part of the structure itself or anything carried thereon from falling into the street; and the right is expressly reserved to the city council by the said ordinance to revoke the bridge grant at any time and to require the defendant companies to remove the bridge upon thirty days’ notice.
“These defendants further aver that they maintain on the property located as aforesaid on the south side of Eastern avenue, one of the most important power stations they have or use in connection with their street railway system in Cincinnati; that it is necessary to place and maintain the bridge structure proposed in manner aforesaid in order to secure by railroad, which is the only means of securing sufficient supplies of the best obtainable smokeless coal, the north end of said proposed, bridge being designed to connect with the.Pennsylvania Railroad, the only railroad in that vicinity, and the defendants being required by ordinance of Cincinnati to operate their power house without *341 the emission of smoke for more than six minutes in any one hour; that the quantity of coal now consumed at said power house is between 35,000 and 40,000 tons per annum, and much of this coal should be stored and carried in large quantities so as to avoid interruptions to street-car service through delays in railroad deliveries; that such storage is not now practicable but would be after completion of the proposed bridge; that these defendants have found it necessary and they propose to enlarge this power plant so as there to generate the electrical energy required to meet the increasing demands of the street railway traffic of the city and sufficient finally to enable the defendants to abandon some of their other power stations; and the quantities of coal that will be ultimately needed at the power station on- Eastern avenue to be supplied by means of this proposed bridge will be about 250,000. tons per annum; and the prevention of or any interference with the construction and maintenance of this bridge as proposed would work irreparable injury both to these defendants and the public.
“The defendants further aver that the only means for transporting coal from the railroad aforesaid or from any other railroad to the said power station is by teams; that the defendant traction company was authorized by ordinance of the city of Cincinnati, passed March 28, 1904, to construct and maintain surface tracks across Eastern avenue at or about the site of the proposed bridge for the purpose of transporting coal from the Pennsylvania tracks to the said power station, but subject, however, to a provision that there should be no obstruction to travel on Eastern avenue; that *342 these defendants found that such a plan as that would be an obstruction to travel and would be impracticable as well as dangerous; that the use of teams has been and is now an obstruction to travel and is also attended by constant danger of collision with street cars, since the teaming has to be carried on at right angles to the line of travel in Eastern avenue; but that the plan proposed of supplying the coal by means of the bridge in question would not interfere with public travel of any kind or with any street use whatever.
“The defendants further aver that it has been and is the usage and custom in the city of Cincinnati through its council and controlling officials to permit the construction, maintenance and use of bridges of various kinds, including structures similar in character to the one involved herein, across and above the surfaces of streets and alleys, and that no interference with public traffic or street usage of any character has been experienced.
“Wherefore these defendants pray that both the temporary and perpetual injunctions prayed for be denied-and that they be dismissed hence with their costs.”
General demurrers to the answers were filed and overruled and the petition dismissed, and on error in the circuit court the judgment of the court of common pleas was affirmed.
The question for determination is, whether a city taxpayer may enjoin the construction by an abutter of a bridge over a street from his property on one side of the street to his property on the other, under an ordinance granting him the right to do so.
Tt is provided by statute, Section 1536-66, Revised Statutes, that “A proprietor of lots or *343 grounds in a municipal corporation, who subdivides or lays the same out for sale, shall cause to be made an accurate map or plat of such subdivision, describing with certainty all grounds laid out or granted for streets, alleys, ways, commons, or other public uses,” and that when such map has been properly acknowledged and approved by the council of the city and recorded in the office of the recorder of the county, it shall be deemed a sufficient conveyance to vest in the municipal corporation the fee of the parcel or parcels of land designated or intended for streets, alleys, ways, commons, or other public uses, to be held in the corporate name in trust to and for the uses and purposes in the instrument set forth and expressed, designated, or intended.
Judge Dillon says, (Section 664a) that “The later and better considered judgments hold that it is comparatively unimportant, as respects the relative rights of the abutting owner and the public in and over streets, whether the bare fee is in one or the other. If the fee is in the public the legal rights of the adjoining owner are in their nature equitable easements; if the fee is in the abutter his rights in and over the streets are in their nature legal; but, in the absence of controlling legislative provision, the extent of such rights is, in either event, substantially, perhaps precisely, the same.” And in Barney v. Keokuk, 94 U. S., 324, it is said: “On the general question as to the rights of the public in a city street we cannot see any material difference in principle, with regard to the extent of those rights, whether the fee is in the public or in the adjacent land-owner, or in some third person.” The decisions in this state are in accord *344 with these statements of the law. Langley v. The Mayor and Trustees of the Town of Gallipolis, 2 Ohio St., 108; Crawford v. Village of Delaware, 7 Ohio St., 459; The Cincinnati and Spring Grove Avenue Street Railway Company v. The Incorporated Village of Cumminsville, 14 Ohio St., 523; Railway Company v. Lawrence, 38 Ohio St., 41; Callen v. The Columbus Edison Electric Light Company, 66 Ohio St., 166.
If the fee is in the city it is in trust for the purposes of a street, and if it is in the abutter it is subject to the easement of a street.
The estate that is vested in the city is measured by the uses and purposes for which the dedication is intended; the remainder remains in the dedicator and vests in the owners of the abutting property. (The Kinnear Manufacturing Company et al. v. Beatty, 65 Ohio St., 264.) The abutting owner’s interest in the street is a property right, and he may make any use of the property that is subject to the easement of a street, or that is held in trust for a street, that does not impair its use for any purpose for which it may be used as a street. Dillon on Municipal Corporations, Sections 656a, 656b, 723c.
“Public streets, squares, and commons, unless there be some special restriction, when the same are dedicated.or acquired, are for the public use, and the use is none the less'for the public at large, as distinguished from the municipality, because they are situate within the limits of the latter, and because the legislature may have given the supervision, control, and regulation of them to the local authorities. The legislature of the State represents the public at large, and has, in the absence of *345 special constitutional restraint, and subject (according to the weight of more recent judicial opinion) to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places.” Dillon, -Section 656. Accordingly it is held, that a franchise to construct a railway in a street, or to lay water, natural or artificial gas pipes, or heating pipes, or to construct telegraph or telephone or electric lighting poles and wires in the streets, or other franchises, may not be granted by a municipality unless it is expressly authorized so to do by the legislature, and there are cases that hold, that the municipality in the absence of power delegated to it by the legislature, either expressly or impliedly, may not license or permit encroachments upon the street, or the use of the street for any private purpose, and that a delegation of such power is not to be implied from a general grant of power to supervise and control the streets. Elliott on Roads and Streets, Sections 451, 653 and 740.
In People v. Harris, 203 Ill., 272, it is held, “An ordinance permitting the construction of a bay window extending into the street or any other encroachment thereon, for purely private purpose or private use, is void.”
“The streets in their entirety are public streets, exclusive for public use, and no part of them can be devoted exclusively to private persons or private use by virtue of municipal ordinances or otherwise.” In Costello v. State, 108 Ala., 45, it is held, that a fruit stand on the sidewalk is an unlawful obstruction, and that the city could not authorize it by license. To the same effect is Denver v. Girard, 21 Colo., 447. In Grove v. Ft. Wayne, 45 Ind., *346 429, it is said: “The power of a city over its streets and the right of the public to them extends upward indefinitely for the purpose of their preservation, safe use and enjoyment; and the duty of the city in this respect is commensurate with its power.”
' We concur in the view that a franchise can be granted only by the state, or by the municipality under power expressly granted, but there are many uses or encroachments upon the streets that are not, and never have been regarded as, nuisances, so long as they serve a useful purpose and do not inconvenience the public, and which may be permitted or licensed under general powers such as that conferred by Section 1536-131, Revised Statutes, which provides that “In all municipal corporations council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, acqueducts and viaducts within the corporation, and shall cause the same to be kept open and in repair and free from nuisance.”
In Elster v. Springfield, 49 Ohio St., 82, a water pipe had been laid in a street under a grant or license by the city, for the purpose of conveying water from a spring to a paper mill several squares distant. In the construction in the street of a large sewer by the city, more than twenty-one years after the pipe had been laid, the water pipe was destroyed and the owner sued the city for damages. In the opinion it is said by Spear, J., (96) “The laying of sewers, like that of gas and water pipes beneath the soil, and the erection of lamps and hitching posts, etc., upon the surface, is a street use, sanctioned as such by their obvious purpose, and long continued usage.” And again he says, (97) “As *347 we have seen, the city as to its streets, is a trustee for the use of the public. A trustee of property for the benefit of the public could not, any more than could a trustee of private property held for known specific and continuing uses alien or encumber the property to the prejudice of the beneficiary, and a purchaser dealing with the trustee, in either case, would be bound to take notice, at his peril, of the limitation of the power. 2 Dillon on Mun. Corp., Section 671; Alton v. Trans. Co., 15 Ill., 60. Hence it would follow that whatever grant may have been made by the town of Springfield to the Kills, to maintain water-pipes in Center street, could have no greater operation than as a temporary license, subject to be revoked at the will of the town, or city, as its necessities in the future uses of the street might require. It necessarily results from this that the enjoyment of the street beneath the surface for the laying of the pipes and the flowing of the water through them was a permissive use, and that no permanent right could be acquired by long continuance.” And it is there held: “The use of the street by the plaintiff, for his water pipes being allowed by license, there was no enjoyment adverse to the city. Nor had the city power by grant, to give plaintiff any right in the street inconsistent with the future legitimate uses of the street by the city. Hence, no right by prescription to maintain the pipes in the street would vest in the plaintiff, although he had enj oyed the use more than twenty-one years, and any damage accruing to plaintiff by removing the pipes, and thus interrupting the flow of water through them, would be damnum absque injuria." In The City of Cincinnati v. Fleischer, Admr., 63 Ohio St., 229, it is held that *348 the city is not liable for personal injuries sustained by a person in falling over a carriage block of the usual size and occupying the usual position of such blocks near the curb upon the street, merely because it permitted it to be in the street.
The immemorial practice has been for the abutter to maintain in the street shade trees, carriage blocks, hitching posts, lamp posts, areas, cellar ways, coal cellars or holes, steps, stairways, fire escapes, porticos, bay windows, awnings, signs, and other conveniences, and' to place his building flush with the street so that the eaves project over the street and his window shutters open over the sidewalk. In a large city where land is very valuable, it is not unreasonable that a property owner should wish to build flush with the street and to place an area way to the basement and bay windows over the street, for they may add very materially to the enjoyment of his building without inconveniencing the public, but if in order to have them he must set his building back from the street line, he will do without, for he cannot afford them at that cost, and so everything will be brought to a dead level and beauty be sacrificed for convenience.
When a franchise is granted, without limit as to time, and invested with the elements of a contract, it is usual for the grant to be made by the state, subject to the approval of the municipality, and when the question is as to the power of the city to make such a grant, it should be held not to exist unless expressly given or necessarily implied, but when the use is not in the nature of a franchise, but is a use that is recognized as permissible by an abutter, the city may authorize it *349 by a permit or a license, under the general power given it of care, supervision and control. Such a permit or license is a mere regulation of the use; it contains none of the elements of a contract, and is revocable at the pleasure of the city. It is so held respecting a permit to an abutter to occupy a street with building materials, to be used in a building on the abutting lot in The City of Columbus v. Penrod, 73 Ohio St., 209.
In Clark v. Fry, 8 Ohio St., 358, where an abutting owner had contracted for the construction of an area, six by twenty feet, in a street in front of his building with steps down the area leading into the Basement, and where a person had fallen into the area and brought suit for damages for his injuries, it was successfully contended by Morrison R. Waite, counsel for plaintiff in error, and afterwards Chief Justice of the Supreme Court of the United States, that the trial court had erred in charging the jury," “That, as the defendant had shown no license or authority from the authorities of the city of Toledo or state of Ohio, to make such an excavation in the street in front of his lot, such excavation was unlawful; and, being unlawful, the defendant Clark was liable for any damage which occurred, by reason thereof, to the plaintiff, when he (the plaintiff) was not himself in fault, although the work was done by Freeman under a contract with Clark entered into for that purpose.”
The easement for a street extends as far below, and as high above the surface of the ground, as is necessary for street purposes, but if the abutter may for a useful purpose, and when the public is not inconvenienced, build an area way in the street to the basement of his building or place structures *350 under the street, he may subject to the same limitations place structures above the street. There is no complaint here that the public will be inconvenienced, or any property rights injured, but the demurrer admits the statements of the answer to the effect, that the bridge will promote the public convenience in the street.
The rule that every incumbrance is unlawful, unless expressly authorized by the legislature is certain and easy of application, but is not according to experience and may result in a very great inconvenience to many and hardship to a few; and so long as such permits or licenses are revocable at the pleasure of the city, whenever the public'convenience requires, and inasmuch as a right to maintain them can not be acquired by their use, however long continued, it is better to suffer the few contentions that may arise than to escape them at the expense of the convenience of so many.

Judgment affirmed.

Crew, C. J., Spear, Davis and Shauck, JJ., concur.