———o———

THE CITY OF ST. LOUIS, Appellant, *v.* GRONE & WHELAN, Respondents.

1. *Revenue — Taxation on private vehicles — Ordinance 7127 not authorized by section 19, p. 63, Sess. Acts 1867.*—The provision of the charter of the city of St. Louis, empowering the mayor and city council to license, tax, and regulate horse railroads, hackney carriages, etc. (Sess. Acts 1867, p. 63, § 19), was intended to apply solely to a class who transact business for the public, and hold themselves out to the community as seeking public employment, and was not designed to extend to vehicles used by persons for their own convenience, or in the transaction of their own private business, and not engaged in any public employment for which compensation is received. And under that provision the city council had no authority to pass ordinance 7127, compelling persons to take out licenses for vehicles used by them for exclusively private purposes.

*Appeal from St. Louis Criminal Court.*

*McGinness,* and *Woerner & Kehr,* for appellant, cited 31 Penn. St. 15.

*R. S. Macdonald*, for respondents, cited 31 Penn. St. 15.

WAGNER, Judge, delivered the opinion of the court.

This case was submitted to the court below on an agreed statement of facts, and judgment was rendered for the defendants. The action was for a violation of ordinance No. 7127, entitled "an ordinance amendatory of ordinance No. 6596, concerning public and private vehicles, and authorizing the appointment of two additional vehicle inspectors," approved February 3, 1870. The first section of this ordinance provides that "all vehicles, public or private, using the streets of the city for trade or traffic, or for any other purpose, no matter whether the owner or owners reside in the city or out of it, shall be subject to the rate of license tax mentioned in ordinance No. 6596." The second section declares that "no vehicles of any kind are exempted from the payment of the tax or license named in ordinance 6596, except those bringing produce produced by the vendor to the different markets for sale." The third section requires all such vehicles to be numbered, etc.

Ordinance 6596, passed July 3, 1868, of which the foregoing is amendatory, in its first section fixes the amount of license tax to be levied on each vehicle, public or private; and in the third section provision is made that the owners of such vehicles having paid the annual license tax shall be released from all other taxes on the same to the city of St. Louis during the period for which the said tax is paid.

It is agreed between the parties that the defendant Whelan was, on and after the 19th day of April, 1870, the owner of four two-horse wagons, which were then used on the streets of the city for the purpose of conveying and transporting beer and soda-water sold by Whelan to the persons having purchased the same from his brewery and factory to the places of business and saloons of such purchasers; that such vehicles were used on the streets of the city in the manner and for the purposes aforesaid; that the vehicle inspector notified Whelan to take out a license, which he refused to do; that Whelan is one of a firm

of brewers and soda-water manufacturers who manufacture beer and soda-water, and that said wagons are used exclusively in carrying beer and soda-water manufactured by them to the different parts of the city where it is sold and offered for sale; that these wagons have been assessed by the city against Whelan for the year 1870; that this assessment is a lien for the amount or tax on personal property, and, finally, that the wagons in question are not used for any other purpose than that above stated. Such are the facts agreed on. The violation of the ordinance is palpable, and the only question is, had the city council, under the charter, authority to pass a law compelling Whelan to take out a license for vehicles used by him for the exclusive purposes mentioned in the agreed case?

The provision of the charter under which the power is sought to be maintained, declares that the mayor and city council shall have power by ordinance "to license, tax, and regulate horse railroads, * * * hackney carriages, omnibuses, carts, drays, and other vehicles, and fix the rates to be charged for the carriage of persons and the wagonage, cartage, and drayage of property." It will be observed that the ordinance refers to and requires license to be taken out on all vehicles, public or private, no matter for what purpose they are used, and whether they are public or private. According to the literal interpretation of this law, every person who may keep a vehicle for his private use must obtain the license or else be liable to the penalties imposed. This ordinance is certainly extraordinary in its character, and must be strictly construed. What was the obvious intent of the Legislature in passing the enactment? Was such an exercise of power as this contemplated? The clause must be taken as a whole to show its purpose, object, and scope. It is "to license, tax, and regulate horse railroads, * * * hackney carriages, omnibuses, carts, drays, and other vehicles, and fix the rate to be charged for the carriage of persons and the wagonage, cartage, and drayage of property."

The whole context of this grant of power shows that it was intended to apply to a class who transact business for the public, and hold themselves out to the community as seeking general

employment. Viewed in that light as a police regulation, it is of admitted utility and convenience, and promotes uniformity and prevents extortion. But that consideration has no influence as respects private vehicles which are used by their owners purely for private purposes. These are subjected to a general tax as any other personal property.

I am satisfied, from the general wording of the statute, that the Legislature never intended that the power should extend to vehicles used by persons for their own convenience or in the transaction of their private business, and not engaged in any public employment for which compensation is received.

Judgment affirmed. The other judges concur.