CITY OF HANNIBAL, Respondent, v. JOHN B. PRICE, Appellant.

St. Louis Court of Appeals, February 14, 1888.

MUNICIPAL CHARTER—AUTHORITY TO TAX PRIVATE VEHICLES.—A power granted in a municipal charter to "license, tax, and regulate * * * street railroad cars and companies, hackney carriages, omnibuses, and all other vehicles, and all other business trades whatever, and fix the rates for carriage of persons, and of wagonage, drayage, and cartage of property," does not empower the city government to impose a license tax on a vehicle used exclusively for private purposes of the owner.

APPEAL from the Hannibal Court of Common Pleas, HON. THOMAS H. BACON, Judge.

*Reversed.*

ANDERSON & FOREMAN, for the appellant: Without express authority given in its charter, the respondent could not pass or enact any valid ordinance establishing a legal license tax for keeping and using a buggy or carriage for private use within its limits. *St. Louis v. Green,* 7 Mo. App. 468. The city charter of the respondent gave no such authority, either expressly or by any permissible legal implication. *St. Louis v. Grone,* 46 Mo. 574; *St. Louis v. Woodruff,* 4 Mo. App. 169. The enumerated vehicles all being public business vehicles used for hire, and constituting a distinct class, the general words "other vehicles," and "all other vehicles," can be construed only to include vehicles in the same class, "*ejusdem generis.*" "Powers encroaching upon the rights of the public or of individuals must be plainly and literally conferred by the statutes or charter." *Farnsworth v. Pautucket,* 13 R. I. 82. "Whenever a genuine doubt arises as to the right to exercise a certain power, it must resolve against the corporation and in favor of the general public." The

rule is most strictly observed in construing powers that may lead to an infringement of personal or property rights. Horr & Bemis, Mun. Police Ordinances, sec. 17. "Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied." Dill. Mun. Corp. (1 Ed.) sec. 55; *St. Louis v. Laughlin*, 49 Mo. 599; *Grumley v. Webb*, 44 Mo. 444; *St. Louis v. Herthel*, 88 Mo. 128. All the special words used in the charter specifying the objects of license, tax, and regulation, have reference only to objects and avocations that are public in their character and used and exercised for profit only. Private buggies, that are most numerous and only used for personal convenience, and never for profit, cannot be included within the letter or spirit of enumerated lists. *St. Louis v. Laughlin, supra; Joyce v. East St. Louis*, 77 Ill. 156; Horr & Bemis, Mun. Police Ordinances, sec. 248; *Snyder v. North Lawrence*, 8 Kan. 82. "An ordinance is entirely inoperative that contains no penalty clause. After the act has been declared a misdemeanor, some provision must be made in the same enactment conferring jurisdiction on the municipal court and decreeing a definite penalty." Horr & Bemis on Mun. Ord., sec. 77; Dill. Mun. Corp. (1 Ed.) secs. 271, 272; *Bowman v. St. John*, 43 Ill. 337. The courts do not take judicial notice of municipal ordinances. The complaint, therefore, does not state a cause of action. *Mooney v. Kennett*, 19 Mo. 551; *State v. Odle*, 42 Mo. 210; *Apitz v. Railroad*, 17 Mo. App. 419. The legislature could not constitutionally authorize the respondent to assess and collect a license tax for the use of a private buggy on its streets for mere purposes of ordinary travel thereon by the owner thereof.

D. H. EBY, for the respondent.

ROMBAUER, J., delivered the opinion of the court.

This is an action brought to test the charter powers of the city of Hannibal to impose a license tax on vehicles

within the city used solely for the accommodation of their owners, and not for pecuniary gain in the transportation of persons or property. A question incidentally to be determined, provided such charter power exists, is whether the defendant is guilty of a violation of the ordinance of the city on that subject, and whether the judgment rendered against him was warranted by the terms of the ordinance.

The grant of power under which the validity of the ordinance in question is claimed is as follows :

" The city council shall have power within the city by ordinance not inconsistent with the constitution or any laws of the state :

" Section 6. To license, tax, and regulate, auctioneers, merchants, retailers, grocers, confectioners, hotels, boarding-houses, bankers, peddlers, real-estate agents, insurance companies, dramshops, liquor-sellers, circuses, shows and exhibitions for pay, ball and ten-pin alleys, hacks, drays, wagons, and other vehicles used within the city for pay, theaters, theatrical exhibitions for pay, porters, fishmongers, butchers, pistol galleries, wood and coal yards, livery and feed stables, billiard-tables, shuffle-boards, bagatelle-tables, restaurants or ordinaries, gift enterprises, hucksters, banking associations and corporations, intelligence offices, public buildings, public halls, public grounds, beer-houses, patent-right dealers, street railroad cars and companies, hackney carriages, omnibuses, and all other vehicles, and all other business trades whatever, and fix the rates for carriage of persons, and of wagonage, drayage, and cartage of property."

Purporting to act under this grant, the city council passed the following ordinance :

" An ordinance in relation to vehicles, public porters, and hotel runners."

" Be it ordained by the City of Hannibal : .

" Section 1. No person shall, in this city, hire out, or keep for public hire, or cause to be used for hire in

the transportation of persons or property, any hack, carriage, omnibus, dray, cart, wagon, or other vehicle, or shall for hire transport persons or property in or upon any such vehicle, or shall exercise for hire the business or calling of a public porter, without having first paid for and obtained a license therefor, according to the provisions of this ordinance. And no person shall, in this city, keep for private use, or cause to be used in the transportation of persons or property, any hack, carriage, omnibus, dray, cart, wagon, or other vehicle, without having first paid for and obtained a license therefor, and no bond shall be required from any person applying for a license under this provision of section 1 of this ordinance, but upon application and payment of two dollars for a one-horse vehicle, four dollars for a two-horse vehicle, or six dollars for a four-horse vehicle, the collector shall issue such license.''

The defendant, owner of a one-horse buggy, used exclusively for the accommodation of himself and family, and in no sense for profit or pecuniary gain, refused to take out a license for the use of such buggy. He was thereupon arrested, and upon trial in the court of common pleas, upon an appeal from the city recorder, was fined five dollars, from which judgment he prosecutes this appeal.

The case was tried upon an agreed statement showing the facts hereinabove recited, all objections to the relevancy of the facts being reserved. The defendant demurred to the evidence, and also asked a number of declarations of law, asserting in substance three propositions: (1) That the ordinance, so far as it referred to the licensing of private vehicles, was void, being *ultra vires* under the charter grant. (2) That the ordinance did not purport to include a vehicle of this description, and was void for uncertainty. (3) That no penalty being prescribed by the ordinance, no judgment could be rendered for an alleged violation thereof.

All the instructions thus asked by the defendant

were refused by the court, which, upon its own motion, declared the law to be as follows :

"The court declares the law to be that the *grava-men* of this action is a claim in the nature of a demand for toll for vehicular use of the city streets, and the charter phrase, 'hacks, drays, wagons, and other vehicles used within the city for pay,' as occurring in the charter of 1845 and 1851, and reproduced in the charter of 1873, the present charter, exhausts the application of said charter to vehicles used for pay, and the charter phrase, 'hackney carriages, omnibuses, and all other vehicles,' as superadded in the charter of 1873, refers to vehicles not used for pay ; and the fact that some unhired vehicles are used merely for pleasure does not exempt such pleasure vehicles from the burden of a license for the use of said streets equally imposed on business vehicles not used for pay, and this antithetic significance in the amendment of 1873 prevails over the rule of *noscitur a sociis*."

The propriety of this declaration is the main question presented for our consideration.

The appellant contends that the legislature could not constitutionally authorize the city of Hannibal to assess and collect a license tax for a private buggy on its streets for mere ordinary purposes of travel thereon by the owner thereof, as such tax is inconsistent with the right to a free use of the streets as public highways. This proposition was incidentally discussed and decided adversely to appellant in *City of St. Louis v. Greene*, 7 Mo. App. 474. In that case a provision in the charter of the city of St. Louis, authorizing it "to license, tax, and regulate hackney carriages, private carriages, barouches, buggies, wagons, omnibuses, carts, drays, and other vehicles," was upheld as constitutionally valid in regard to all the subjects of license therein enumerated.

The question to be determined, therefore, now, is not as to the constitutional validity, but as to the extent of the grant. The charter of the city of Hannibal has no reference to any private vehicle *eo nomine*. The

words, "other vehicles," under which the right is claimed, are a general description following hackney carriages and omnibuses. No reason can be assigned why the grant, under the rule of *ejusdem generis*, should not be confined to licensing vehicles of the same character and description as those specially enumerated.

This proposition is clearly stated in *City of St. Louis v. Laughlin*, 49 Mo. 563, where *Sandiman v. Beach*, 7 Barn. & Cr. 96, is quoted and approved. In *City of St. Louis v. Grone*, 46 Mo. 576, a case almost identical in its facts with the present, a charter grant, "to license, tax, and regulate horse railroads * * * hackney carriages, omnibuses, carts, drays, and other vehicles, and fix the rates to be charged for the carriage of persons, and the wagonage, cartage, and drayage of property," was held not to include the power of compelling persons to take out license for vehicles used by them exclusively for private purposes. See, also, *Knox City v. Thompson*, 19 Mo. App. 526, and cases cited; and *Joyce v. East St. Louis*, 77 Ill. 156.

It is clear, therefore, that the city of Hannibal cannot, under the power to license "other vehicles," following a special enumeration of vehicles which it may license, such enumeration including vehicles used for pecuniary profit only, impose a license tax on a vehicle used exclusively for private purposes.

We are not clear what the court means by referring, in its declaration of law, to former charters in the city of Hannibal. No such charters are in evidence in this case. The only charter clause in evidence bearing upon the subject is the one above set out. Every part of that clause may be considered for the purpose of arriving at a just interpretation of any other clause. If any additional argument were needed to show that the licensing of public conveyances only was intended by the grant, it would be furnished by the concluding part of the section which authorizes the council "to fix the rates for the carriage of persons, and of wagonage, drayage, and cartage of property."

It thus appears, as was said in *City of St. Louis v. Grone, supra*, that "the whole context of this grant of power shows that it was intended to apply to a class who transact business for the public and hold themselves out to the community as seeking general employment."

The foregoing considerations necessitate a reversal of the judgment. As, under the agreed facts, there can be no recovery, the cause will not be remanded.

All the judges concurring, the judgment is reversed.