Kansas City v. Richardson.

---

# KANSAS CITY v. R. H. RICHARDSON, Appellant.

**Kansas City Court of Appeals, December 2, 1901.**

1. **Municipal Corporation: CONSTRUCTION: CONSTITUTION: KANSAS CITY FREEHOLDER'S CHARTER.** The charter of Kansas City confers power to divide, by ordinance, the various occupations into different classes, and a tax imposed upon all persons in any of such classes is not obnoxious to the constitutional inhibition against the inequality of taxation.

2. ——: ——: ——: **TAXATION.** The constitutional provision securing uniformity of taxation is restricted to property alone, and has no application to occupation taxes.

3. ——: ——: ——: ——. In no event does such constitutional provision preclude the division of things taxable into classes and the imposition of taxes bearing equally upon the members of each class, although unequally upon the classes, and the courts can not interfere with such classification.

4. ——: ——: ——: ——: **PERSONAL PROPERTY: LICENSE.** An ordinance dividing vehicles and teams into different classes and imposing an occupation tax on the separate classes, is not a tax on personal property, and though imposed for revenue is in the nature of a license, being a privilege connected with property and is not in conflict with the constitutional provision requiring all property to be taxed in proportion to its value.

5. ——: ——: **KANSAS CITY CHARTER: TAXATION: STREETS.** The enjoyment of the right to use the streets is subject to reasonable regulation, and the municipal authorities, under a charter like that of Kansas City, may impose an occupation tax upon vehicles, public or private, using the streets. (Cases discussed and distinguished.)

6. ——: ——: ——: ——: RULES OF INTERPRETATION.
The freeholder's charter of Kansas City is examined and held to
confer power to license tax and regulate two distinct classes of ve-
hicles, and plainly indicates the class to which each kind of vehicle
belongs; and the rules of interpretation are useless in developing
the meaning, since such rules are not made to create ambiguities or
to frustrate a plain legislative intent.   (Cases considered.)

Appeal from Jackson Criminal Court.—*Hon. John W. Wof-
ford,* Judge.

AFFIRMED.

*Wollman, Solomon & Cooper, I. N. Watson, Botsford,
Deatherage & Young, Cook & Gossett* and *Hamner & Hamner*
for appellant.

(1)   Tax in controversy is triple taxation.   The laun-
dry company in question pays an ad valorem tax upon all
its property, real and personal, including the wagon in ques-
tion; second, it pays a license on its occupation as a laundry-
man; third, the ordinance requires it to pay a license tax on
each one of its vehicles.   (2)   License tax is usually on an
occupation.   This is a tax on property, not on an occupation.
(3)   Taxes on vehicles to repair streets are partial, not uni-
form, and not warranted by the Constitution or city charter.
City of St. Louis v. Spiegel, 75 Mo. 145; City of St. Louis
v. Consolidated Coal Co., 113 Mo. 83.   (4)   Can Kansas
City collect tolls for the use of the free public streets? 2 Dil-
lon's Municipal Corporations (4 Ed.), sec. 682; St. Louis
v. Green, 7 Mo. App. 468; Note 4 to sec. 657, 2 Dillon on
Municipal Corporations (4 Ed.); 2 Dillon on Municipal Cor-
porations (4 Ed.), sec. 724; State v. Street Railway, 85 Mo.
263; Chicago v. Collins, 175 Ill. 445; 51 N. C. 907.   (5)
Adjudged cases are against this power.   City of St. Louis
v. Grone, 46 Mo. 574; City of Hannibal v. Price, 29 Mo.

App. 280; City of St. Louis v. Laughlin, 49 Mo. 559; State v. Schuchmann, 133 Mo. 111; McNichol v. U. S. Mercantile Reporting Agency, 74 Mo. 457; State v. Guild, 149 Mo. 370.

*Frank Gordon* and *R. B. Middlebrook* for respondent.

(1)    There is no ambiguity, latent or patent, in the terms used in confering power on the city to license wagons, hence the doctrines of *noscitur a sociis* and *ejusdem generis* can not be invoked.    Such rules are used to solve ambiguities and not to create them.    Dame's Appeal, 62 Pa. State 419; Everitt v. Wells, 2 Scott N. R. 531; Sedg. on Const. of Stat. and Const. Law, 205, 206, 207 and 208; Potter's Dwarris on Stat., 146, sec. 20; Maxwell v. State, 89 Ala. 150, 1. c. 161; Palmer v. Thacher, 3 Q. B. 353; Niagara Co. v. People, 7 Hill (N. Y.) 511; State ex rel. v. Auditor, 36 Mo. 70; Priestman v. U. S. 4 Dall. (U. S.) 28.    (2)    The doctrine of *ejusdem generis* is not involved in this case.    The city is not attempting to exercise any power by virtue of the clause, "all other vehicles," found at the end of the sentence, but is exercising its power by virtue of the express words used in the charter.    State ex rel. v. Corkins, 123 Mo. 56; 17 Am. and Eng. Ency. of Law, title "Others," p. 278 et seq.; State v. Williams, 35 Mo. App. 546; Eubanks v. State, 5 Mo. 450; 1 Kent Com. 462; State v. Shock, 68 Mo. 560; Boynton v. Curle, 4 Mo. 599; Foster v. Blount, 18 Ala. 687; State v. Phelan, 66 Mo. App. 556; St. Joseph v. Elliott, 47 Mo. App. 421; Kansas City v. Vindquest, 36 Mo. App. 584; State v. Hays, 78 Mo. 600. (3) If the court decides that the language is equivocal enough to justify any outside investigation as to its meaning, then the rule is that in ascertaining the intent of the lawmakers, the old law will be inspected and compared with the new law, and the evils to be remedied by enacting the new law will be examined, together with the end to be

attained by forming the new law, and a comparison will be made between the old charter of 1875 and the new charter of 1889, to ascertain what effect, if any, will be given to the change in the clause licensing vehicles. Gabriel v. Mullen, 111 Mo. 123; State ex rel. v. Hostetter, 137 Mo. 649; Dowdy v. Wamble, 110 Mo. 283; Greeley v. Railroad, 123 Mo. 163. (4) Kansas City has been given triple rights with reference to the taxation of vehicles: First. An ad valorem tax on property. Second. A vehicle tax for the use of the streets. Third. A tax on the business or occupation of using and driving vehicles, such as hackmen, draymen, omnibus drivers, etc. (5) The contention of the defendant that a laundry wagon is a private vehicle, and exempt from license tax, is contrary to common experience and observation, and has no basis either in fact or in law. (6) The ordinance is not class legislation, and can not, by any reasonable argument, be made to appear as such. The varying schedule of fees is based on a rational and reasonable distinction between various kinds of vehicles wearing out the streets; and describing vehicles by the number of horses used to draw them, has been expressly declared, by the Supreme Court of Missouri, to be a just and equitable classification of vehicles for license purposes. St. Louis v. Green, 7 Mo. App. 477; City of Aurora v. McGannon, 138 Mo. 38; Commonwealth v. Clark, 195 Pa. St. 634; Kniseley v. Coterel, 196 Pa. St. 614; Morgan v. Commonwealth, 35 S. E. (Va.) 448; Lasher v. People, 55 N. E. (Ill.) 663; State v. Wagener, 80 N. W. 442; Daniels v. State, 50 N. E. 74; Cotting v. Kansas City Stock Yards Co., 79 Fed. 679; Railroad v. People, 165 U. S. 628; Singer Mfg. Co. v. Wright, 97 Ga. 114; City of Pittsburg v. Coyle, 165 Pa. St. 61; State ex rel. v. Railroad, 61 S. W. (Mo.) 603; W. W. Cargill Co. v. State of Minnesota, 180 U. S. 452; In re Martin, 64 Pac. 43; City of Newcastle v. Cutler, 15 Pa. Super. Ct. 612; Johnson v. Asbury Park. 33

A. (N. J.) 850; People v. Hotchkins, 76 N. W. 142; State ex rel. v. Meier, 143 Mo. 439.

SMITH, P. J.—By section 1, article 3 of the Kansas City charter of 1889, it was provided that the mayor and common council should have the power by ordinance "to license, tax and regulate . . . hansom cabs, hackney coaches, carriages, barouches, buggies, wagons, omnibuses, carts, drays, job wagons, and all other vehicles; lenders of money on chattel mortgages; to fix the rates for carriage of persons and of wagonage, drayage and cartage, and regulate the width of tires of all vehicles for heavy transportation," etc. Later on, the said plaintiff city passed an ordinance, by the first section of which it was provided: "Hereafter no vehicle shall be used, driven or operated in or upon the streets, alleys or public places of the city, without a license being paid for such use. And by reason of the fact that the streets and public places of the city are more rapidly worn and more constantly used by some vehicles than others, the following schedule of license fees is hereby fixed to be paid for such . . . wagons (other than job): When drawn by one horse or animal, $2 per annum; when drawn by two horses or animals, $4 per annum; when drawn by three horses or animals, $5 per annum; when drawn by four or more horses or animals, $6 per annum."

The fee required for the license to use, on the streets, each one of the other vehicles specially named in the previously quoted charter provision is likewise graduated according to the number of horses or animals drawing them. By the second section it was ordained that: "No person shall use or drive any vehicle required by this ordinance to be licensed," etc., "in or upon any street or public place unless a license for the same has been procured," etc. And section 3 provides that any person failing to comply with any provision or regu-

lation of this ordinance shall, upon conviction, be adjudged guilty of a misdemeanor and subject to a fine, etc.

The defendant was prosecuted and convicted, under the ordinance just referred to, for driving a one-horse laundry wagon on the streets of the plaintiff city, which said horse and wagon was owned by the Gate City Laundry Company, a corporation operating a steam laundry within the limits of the plaintiff city. It was admitted (1) that said laundry company had a license from the plaintiff city to carry on and operate therein a steam laundry business; (2) that the sole use to which the wagon was put by the laundry company was the collecting and gathering up of linen and laundry bundles of customers and carrying the same to said laundry pant—and when washed, ironed and laundried, carried back to its customers; (3) that there was no charge made either by defendant or the laundry company for the use of the wagon; and (4) that the defendant had not paid the wagon license required by said ordinance.

The defendant has brought the cause here by appeal and by which he assails the validity of said ordinance on the ground:

I. That said ordinance is violative of section 3, article 10 of the State Constitution, which requires that taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying them. The object of this constitutional provision was to prevent discrimination between objects belonging to the same class of subjects. There can be no doubt as to the power conferred by the said section of the charter of the plaintiff city to divide by ordinance the various occupations into different classes and that a tax upon all the persons belonging to one class would not be obnoxious to the Constitution merely because another class be not taxed. Kansas City v. Grush, 151 Mo. 128.

The constitutional provision just referred to does not in-

clude every species of taxation. It is restricted in its application to property alone. It is without application to taxes on privileges or occupations, or on the exercise of a civil right. St. Louis v. Green, 7 Mo. App. 468; St. Louis v. Green, 70 Mo. 562; Glasgow v. Rowse, 43 Mo. 489; St. Louis v. Sternberg, 69 Mo. 302.

But if we are in error in this and the said constitutional provision is applicable to license taxes (Kansas City v. Grush, supra, and St. Louis v. Speigle, 90 Mo. 587), still, it is clear that the ordinance here is not obnoxious to it. The requirement of equality and uniformity does not preclude the division of things taxable into classes and the imposition of taxes which, while bearing equally upon different members of each class, bear unequally upon the classes in the aggregate; and a legislative division of this sort can not be interfered with by the courts. Aurora v. McGannon, 138 Mo. 38, and authorities there cited. And in the last case cited it was held that an ordinance which imposed a license of two dollars on merchants with a stock of less than one thousand dollars, and three dollars on those with a greater stock, did not violate said constitutional provision. And, therefore, it seems to us that as the tax exacted by this ordinance is uniform as to each class of wagons therein named and graduates the charge so that that kind which most wears out the streets shall pay the most and those which wear them out less shall pay less, the rule of uniformity required by the Constitution is not trenched upon.

II. The defendant insists that the license tax required by the present ordinance is a tax upon personal property. To this insistence we can not yield our assent, for the reason that we think the law is now well settled, at least as far as we are concerned, that it is a license tax on a privilege connected with property, and not upon the property. And though imposed for revenue, it is a tax in the nature of a license, because it

is a permission to do that which, after the passage of the ordinance, it became unlawful to do without having first obtained the permission. St. Louis v. Green, 7 Mo. App. ante; s. c., 70 Mo. ante. And since the said license tax is upon a privilege connected with property and not upon property, the argument that the ordinance is violative of section 4, article 10 of the Constitution, is without force.

III. The defendant further insists that the said ordinance is void for the further reason that it exacts a tax for the privilege of using vehicles on the streets of said plaintiff city and thereby abridges the right of every citizen of the State to use the public streets of plaintiff without money and without price. It is perhaps a fundamental idea that a street shall be public for all purposes to those who make use thereof. But it must be understood that the exercise and enjoyment of such right is subject to such reasonable regulations as may be prescribed by ordinance. The use of the streets by vehicles of every kind doubtless may be regulated by the city authorities under a charter or statute empowering them to regulate vehicles. Elliott on Streets, sec. 454; Dillon's Munic. Corp., sec. 682. And in this State, under a charter which conferred the power to tax and to regulate, an ordinance was upheld which exacted a tax on the privilege of using vehicles, both public and private, on the streets, and provided a penalty for failure to pay such tax. St. Louis v. Green, supra.

Whether an ordinance passed, exacting a license tax to be paid on vehicles of any kind to be used on the streets of a city, be referable to the police or revenue powers or to both is immaterial, since in either case the right to use the street after the passage of such an ordinance becomes a conditional or qualified right, and so it will not do, as we think, to say that the ordinance now before us is invalid because it attaches certain conditions and qualifications to the privilege of using the streets of plaintiff city. The defendant strenuously in-

sists that the plaintiff city is without power to impose, by ordinance, a tax on the owners of any kind of vehicle for the use of its streets, and that the ordinance in question which is to that effect is for that reason invalid. The defendant, in support of this insistence, has cited us to several sections in Dillon's Municipal Corporations (sections 657, 682, 724, 729), and to State v. Railway, 85 Mo. 263, but these authorities we can not heed since it clearly appears to us that a contrary statement of the law, which we must follow, is to be found in the late case of St. Louis v. Weitzel, 130 Mo. 619. In St. Louis v. Green, supra, where the charter of the city provided that the city authorities should have power by ordinance to license, tax and regulate hackney carriages, private carriages, barouches, buggies, wagons, etc., and that, under an ordinance passed in pursuance of said charter provision, the defendant who operated a private wagon in connection with his manufacturing business and one not used for hire, it was held that under this charter grant of power St. Louis was authorized by ordinance to exact a license tax of the owners of vehicles for the use of the streets and that, too, whether such vehicles were kept for public or private use. And further, that as said city charter gave the power to tax and license private vehicles, it gave the power to tax the citizen for their use upon the streets. And it was further held in the same case that the probable principle upon which the Legislature had seen fit to authorize it to tax public and private vehicles was that of the common-law maxim: *"Qui sentit commodum, sentire debet et onus;"* "that those who mainly wear out the streets should pay for keeping them in repair." Subsequently, when the case was before the Supreme Court (70 Mo. 562) this holding was upheld and adopted by that court. And in St. Louis v. Weitzel, 130 Mo. loc. cit. 619, it was held that that city, under the power to license, tax and regulate occupations, professions and trades, had

power to levy (1) a tax on property; (2) a vehicle tax for use of streets; and (3) a tax on the business or occupation, citing St. Louis v. Green, supra, so that it results that even if the ruling made in State v. Corrigan, 85 Mo. 263, overthrew that made in St. Louis v. Green, the later case of St. Louis v. Weitzel has restored it. But an examination of State v. Corrigan has convinced us that it decides nothing at variance with what is decided in St. Louis v. Green, and St. Louis v. Weitzel.

Section 727 quoted from Dillon's Municipal Corporations and approvingly referred to in State v. Corrigan (referred to by defendant) decides no more than that municipal corporations can not, by an implied power, confer corporate franchises on street railways or authorize them to take tolls, and that such power must come from the Legislature. It is too plain for argument that the implied power of a municipal corporation to authorize a street railway to take tolls, is not the same thing as the exercise by it of an express power granted to it by its charter to exact a tax for the privilege of using its streets for operating vehicles thereon, and, hence, it is difficult to perceive anything in State v. Corrigan that impugns St. Louis v. Green. We think it has been authoritatively settled in this State, since St. Louis v. Green was decided, more than twenty years ago, that under a charter power to tax and regulate specified public and private vehicles a municipal corporation may pass a valid ordinance taxing either class of them for the use of its streets.

V. The defendant's final insistence is that the power to pass the ordinance is not conferred by the charter of the plaintiff city. And in support of this he cites us to St. Louis v. Grone, 46 Mo. 574. The ordinance which was before the court in that case was condemned because it was broader and more comprehensive than the grant of power conferred by the charter. The former exacted a license tax not only on ve-

hicles used for hire, but on those used by persons for their own convenience or in connection with their private business and not engaged in any public employment for which compensation was received, while the latter conferred only the power to license, tax and regulate hackney carriages, omnibuses, carts, drays and other vehicles and to fix the rates to be charged for carriage of persons and the wagonage, cartage and drayage of property. The express grant of power in the charter only extended to one class of vehicles; that is to say, those used for hire; while the ordinance covered those used exclusively for private purposes as well as those used for hire. The several kinds of vehicles, to which the power of tax was extended, were specially named in the charter grant and, therefore, it is clear that if the power conferred by the charter be construed in accordance with the rule of *expressio unius,* etc., or that of *ejusdem generis,* the ordinance could not have been upheld. The language of section 1 of article 3 of the charter of 1875, of plaintiff city, is as to the specified subjects of the grant identical with the charter referred to in the Grone case, and had the ordinance now under review been based upon that charter grant of power instead of on that in the present charter referred to by us at the beginning, the parallelism between that case and this would have been complete. But here it is seen the charter of plaintiff city confers the power to "license, tax and regulate" two distinct classes or groups of vehicles, specially naming the members of each class or group. The line of division or distinction between the two is most obvious. The terms used by the grant to designate the several kinds of vehicles to which it extended, *ex vi termini,* plainly indicates the class to which each should be assigned. There is no difficulty in determining which one of the vehicles named in the charter grant is public and which private. Any court would be required to know this because it is common knowledge. Here the ordinance covers those vehicles that are spec-

ially named in the charter. In Grone's case the ordinance undertook to include a class of vehicles not particularly named in the charter grant, but claimed to have been covered by the general phrase "other vehicles." While here the power to tax each of the vehicles named in the ordinance was expressly conferred by the charter of the plaintiff city. In this case there is not, as there was in that, any room for the application of the rules of *ejusdem generis* or *noscitur a sociis*. The application of these rules can be successfully invoked only in those cases where it is required to aid in ascertaining the legislative intent—where there is some ambiguity or obscurity in the legislative expression, so that the intent is doubtful or uncertain. But these rules are not made to create ambiguities nor are they allowed to intervene to frustrate the plain legislative intent: State v. Corkins, 123 Mo. 56. What could be plainer or less ambiguous or obscure than the meaning of the language of the present charter grant of power to license, tax and regulate the several kinds of vehicles therein specified? The intention is so clearly expressed that the application of no technical rule of interpretation is required to make it understood.

St. Louis v. Grone, supra, and Hannibal v. Price, 29 Mo. App. 280, are each illustrations of the application of the rule *ejusdem generis* in ascertaining the meaning of the words of a charter "all other vehicles," following the enumeration of a single class. But neither of those cases, so far as we can discover, have any direct bearing on the present one. When the Legislature, or the freeholders as here, have in a charter expressly conferred the power to tax two distinct classes of vehicles and have followed this express grant with the phrase, "all other vehicles," we do not think the power to tax either the one or the other of such classes can be impaired or frittered away by the application to such phrase of any technical rule of construction.

It is our conclusion that the two classes of vehicles mentioned in the grant of power to plaintiff city, "to license, tax and regulate," are as separate and distinct as if the word "public" had preceded and described the one, and that of "private" had preceded and described the other; or, in other words, said charter provision conferred an express power on the plaintiff city to license and tax all the public and private vehicles therein enumerated, and the ordinance bottomed on it is valid.

An examination of the instructions has convinced us that the court committed no error in the giving or refusing of them, and, hence, it results that the judgment must be affirmed.   All concur.