THE STATE, THE INHABITANTS OF THE TOWNSHIP OF MILLBURN, PROSECUTORS; v. THE VILLAGE OF SOUTH ORANGE.

1. The act of 1891 (*Pamph. L., p.* 124) gives authority to villages with a specified density of population, having a public water supply, to construct sewers running into adjoining townships, and to purchase lands therein for sewage disposal works. The act of 1892 (*Pamph. L., p.* 452) repeals the act of 1891, so far as it permits such lands to be used for a sewer receptacle without the consent of the township committee.

2. The title of the later act is broad enough to authorize the extension of its provisions to lands purchased by the village of South Orange before its passage.

3. When a municipal corporation has purchased lands, under legislative authority, for a specified public purpose, it is within the power of the legislature, by subsequent legislation, to change the public uses to which such lands shall be devoted, or to prescribe conditions which shall restrain the use of such lands until the conditions are complied with.

4. The village of South Orange having purchased lands in Millburn township for a sewage receptacle, under the provisions of the act of 1891, it was competent for the legislature, by the act of 1892, to annex, as a condition to the right of South Orange to use such lands for the purpose for which they were acquired, that the consent of Millburn thereto should be first procured. In that respect the act of 1892 is constitutional.

5. *Quære:* Whether the act of 1891 is private, special and local, in that it applies to villages of a certain density of population, having a public water supply, and does not include towns and boroughs under like conditions?

On *certiorari.*

Argued at November Term, 1892, before Justices VAN SYCKEL and MAGIE.

For the prosecutors, *Edward L. Price, Benjamin A. Vail, Allan L. McDermott* and *Richard Wayne Parker.*

For the defendants, *James McC. Morrow* and *Henry Young.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The question involved in this contro-
versy is whether, under existing laws, the village of South
Orange has the right to construct sewers for the purpose of
carrying its sewage outside of its own corporate limits into
the township of Millburn, to be there disposed of upon lands
purchased for a sewage receptacle.

The validity of the ordinances of the defendant corporation
authorizing this work is controverted for a number of reasons,
which have been elaborately argued, but in the view taken
by the court the discussion will be within narrower limits.

The act of 1891 (*Pamph. L.*, *p.* 124, § 7) gives the defend-
ant the right to buy lands, either within its corporate limits,
or beyond its limits, for a sewage receptacle.

Section 8 provides for condemnation in case an agreement
cannot be had with the landowner.

Under this grant of power the defendant has purchased the
lands proposed to be used for that purpose, in said township
of Millburn.

After this purchase was made, and after the passage of the
act of 1892 hereinafter referred to, the defendant corporation
passed an ordinance for the construction of a sewer to said
lands in the township of Millburn.

The relator denies the right of the defendant to make a
sewage receptacle of lands within the township of Millburn,
*without the consent of its township committee, and, to sustain*
that position, relies upon the act of April 9th, 1892.  *Pamph.
L.*, *p.* 452.

Section 1 of this act provides that it shall be lawful for
municipal corporations to secure by purchase, or condemna-
tion, or otherwise, in any township or other municipal corpo-
ration, such land or real estate as may be necessary for the
erection or construction of any sewage receptacle for the dis-
posal of the sewage of the municipality in which a system of
sewers has been or may thereafter be constructed.

The second section provides that it shall be lawful for any
municipal corporation, when it has heretofore secured or may

hereafter secure such land or real estate in an adjoining township, for the purpose mentioned in section 1, to proceed to the work of preparing such land for the disposal of its sewage, and to use such land for the purpose designated, when it has secured the consent, by resolution, of the township committee within whose boundaries such lands are located.

This section expressly provides that lands secured prior to the passage of this act, for a sewage receptacle, may be used for that purpose, when the consent of the political district where such lands lie, is procured, and this, by necessary implication, excludes the right so to use them without such consent previously obtained.

The third section declares that all acts and parts of acts inconsistent with, or not conforming to, the provisions and requirements of this act, be and the same are thereby repealed, in so far as their operation may conflict with this act.

The act of 1891 does conflict with this act, in allowing lands to be taken and appropriated to sewage disposal without the consent of the township committee, and to that extent the prior act is repealed.

To meet this objection, the defendant insists, in the first place, that in this respect the act of 1892 is unconstitutional; that its title shows no retrospective intent and gives no indication of an intention to legislate in regard to lands previously purchased, but only in relation to lands to be acquired in the future.

The title of the act is, "An act to allow towns, villages or other municipal corporations to acquire and use lands or real estate in an adjoining township or other municipal corporation for use for the construction of a sewage receptacle or sewage disposal works."

The cardinal rule must be observed, that the act must be upheld in its integrity, if it can be done by any reasonable interpretation of the language used in the title.

It may be read, "An act to allow towns, &c., to acquire lands for use for the construction of a sewage receptacle, and to use lands for the construction of a sewage receptacle." It

seems to me that the draftsman of the act inserted, after the word " corporation," in the title, the words " for use," to make it more clear that it was intended to extend the operation of the act to lands then owned by the municipality. In my judgment, it will be too narrow a construction of the language of the title of this act to adjudge that any part of this legislation is outside of it.

If a rule, so stringent as that by which the defendant proposes to test the constitutionality of this act of 1892, is applied to the title of the act of 1891, it will be difficult to uphold the validity of the latter act, in so far as it authorizes the construction of a sewer by the village of South Orange outside of and beyond its own territorial limits.

In the second place, it is claimed that the title to these lands, which had been acquired by the defendant under legislative authority previous to the passage of the act of 1892, is not only a right of property which cannot be divested by the lawmaker, but also that the legislature cannot forbid the use of the lands for the purpose for which they were acquired.

The ground taken is, that the real estate and property of a municipal corporation are protected by those clauses of the fundamental law which secure the inviolability of contracts, and that such property is subject to legislative control to no greater extent than all other property in the state.

In *Dartmouth College* v. *Woodward*, 4 *Wheat.* 518, Mr. Justice Story says : " It may be admitted that corporations for mere public government, such as towns, cities and counties, may in many respects be subject to legislative control. But it will hardly be contended that even in respect to such corporations, the legislative power is so transcendent that it may, at its will, take away the private property of the corporation or change the uses of its private funds acquired under the public faith."

Mr. Justice Washington, in the same case, said that " in respect to public corporations which exist only for public purposes, such as towns, cities, &c., the legislature may under proper limitations change, modify, enlarge or restrain them,

securing, however, the property for the use of those for whom and at whose expense it was purchased."

The argument of Chief Justice Marshall was directed to establishing the distinction between public corporations, and private corporations exercising their functions in a measure for the public benefit. He held that although the trustees of Dartmouth College derived their power from a regal source, they did not partake of the spirit of their origin, and while he classified that institution with private corporations, whose rights and properties are within the protection of constitutional guaranties, he declared that if the act of incorporation was a grant of political power, if it created a civil institution to be employed in the administration of government, or if the funds of the college were public property, the subject was one in which the legislature of the state may act according to its own judgment, unrestrained by any limitation of its power, imposed by the federal constitution.

In *Grogan* v. *San Francisco*, 18 *Cal.* 591, Chief Justice Field held that when municipal corporations are empowered to take and hold private property for municipal uses, such property is invested with the security of other private rights.

The controversy in that case arose in this way : In the governing body of San Francisco an ordinance was introduced to sell certain lands to which the city had the title. The ordinance was really rejected, but under an allegation that it was passed the property was sold at public auction, whereupon the city treasurer refused to make a conveyance to the purchaser. Then the legislature of California passed an act directing the city treasurer to make a conveyance of the lands to the bidder at the sale under the rejected ordinance.

The validity of this enactment was challenged by the city, and the Supreme Court of the state held that the legislature could not divest the title of the city without its consent.

In *Darlington* v. *The Mayor of New York*, 31 *N. Y.* 164, Chief Justice Denio refused to accede to the proposition that the legislature possessed no wider power over such property

than it could exercise over that of an individual or private corporation.

In *Webb* v. *New York*, 64 *How.* (*N. Y.*) *Pr.* 10, it was adjudged that the rights of the city of New York to the real estate which it owned in fee, under grants in ancient charters, were as indestructible by legislation as the like property of individuals, and that, therefore, the legislature had no right to pass an act ordering the demolition of a reservoir built by the city upon such property, and directing that it be converted into a public park.

The real estate, in that case, was held by the city of New York before the city was within control of the state government. It was not stamped with any political trust or purpose, but was held in fee by the city as its private property.

In *County of Richmond* v. *County of Lawrence*, 12 *Ill.* 1, the Supreme Court of Illinois said that "the state may make a contract with a municipal corporation which it cannot subsequently impair. In such case the corporation is to be regarded as a private company. A grant may be made to a public corporation for purposes of private advantage, and, although the public may also derive a common benefit therefrom, yet the corporation stands on the same footing, as respects such grants, as would any body of persons upon whom like privileges were conferred." But all that was involved in that case was whether, after the state had distributed money to a county for purposes of internal improvements, the legislature could, before the money was expended, authorize it to be withdrawn from the county treasurer. The legislative power, in that respect, was upheld by the Illinois court.

*North Yarmouth* v. *Skillings*, 45 *Maine* 133, and *Hartford Bridge Co.* v. *East Hartford*, 16 *Conn.* 149, affirm the right of the legislature, according to its own pleasure and sense of justice, to provide for the division of the corporate property and the corporate burdens in an act dividing the territory of a town.

The right of the state to interfere with property which a

public corporation may have the right to hold for purely private purposes, such, for example, as may be donated to it to dispense in charities, as hospitals and the like institutions, is not involved in this discussion. This controversy relates only to the control which may be exercised over property which the municipality has become possessed of for the purpose of enabling it to discharge its functions of government.

The cases which have been cited show the lines along which judicial investigation has been pursued, but they bear only remotely upon the real issue to be decided. So far as my research has extended, there is no case in point.

In view of the marked difference which exists between the relation of the individual and of private corporations to the state, and that which the state bears to its political subdivisions, any attempt to establish rights in the latter, upon reasons which would furnish a solid basis for the former, must obviously be misleading.

Municipalities are created only for public purposes; they are but parts of the machinery for conducting the affairs of the state, and possess no powers but such as are bestowed upon them for public political ends, subject to be altered or modified as the exigencies of the public may demand. The defendant is an agency of the state government, and its property for the public uses is, to a large extent, within legislative control.

A natural person has the right to acquire and hold property without license from the state, while a corporation, private or public, deriving all its powers from the sovereign, may have limitations imposed upon its right of tenure at the legislative will. When a private corporation is permitted to acquire and hold property without any limitation upon such right, the title to property so acquired is presumed to be vested in it exclusively for its private purposes, and is as fully within the protection of constitutional guaranties as the property of a natural person.

But the authority granted to a municipal corporation to purchase property must be presumed to be for the purpose of

enabling it to discharge its public functions in a beneficial way, and its title cannot be regarded as so absolute as to strip the legislature of all control whatever over its uses, in exercising its unquestionable right to regulate and modify the powers bestowed upon the local government. As it is liable at any time to have its granted powers withdrawn, or so modified by legislation as to render its property unavailable through its own corporate action, it is manifest that it cannot have in itself that absolute right to its property which inheres in natural persons. The legislature necessarily retains some power to interfere, at least incidentally, with its disposition and use.

The state may bind itself by contract, but powers of government, in a strict sense, cannot be irrevocably surrendered by the legislature, nor will the lawmaker be presumed to have divested itself of such control over the property committed to these public corporations for governmental uses as will prohibit it from providing for the public welfare by laws which may, in some measure, modify or change the uses to which such property may have been devoted.

While it may be conceded that the legislature cannot deprive this defendant of the title to its lands, and bestow them upon another political district, it has not denuded itself of the capacity to prescribe the mode in which such property shall be enjoyed by the public corporation. To this extent it seems that the legislative power over property must inhere in, and be a necessary incident to, the power to control the existence of the corporation. If a contract between the state and the public corporation can be deduced from the fact that there is legislative authority to purchase property for a specified public purpose, the extreme limit of the restraint it imposes upon the legislature is that, while it may regulate or change the uses to which such property may be devoted, it cannot deprive the corporation of it.

A more rigid doctrine will deprive the legislature, in some measure, of the right to exercise the police power.

. This power to restrain or prohibit the use even of private

property, in a way detrimental to the public health or safety, is beyond dispute.

The case of *Mugler* v. *Kansas*, 123 *U. S.* 623, shows how comprehensive and broad this power is. In that case the federal court declared that it was the province of the legislature primarily to determine whether the public health or morals required the exercise of this power, although it must be settled ultimately by the courts whether, in any given instance, the legislature had exceeded its prerogative.

All rights are held subject to the police power of the state over the public health and the public morals. The legislature cannot strip itself of that branch of its power. *Beer Co.* v. *Massachusetts*, 97 *U. S.* 25 ; *Butchers' Union* v. *Crescent City Co.*, 111 *Id.* 746 ; *New Orleans Gas Co.* v. *Louisiana Co.*, 115 *Id.* 650.

In the case now submitted, it was in the exercise of the police power that the legislature was enabled to authorize South Orange to invade the territory of Millburn and take private property for its own uses. Sewers are projected for sanitary purposes, and, in the grant of authority to one political subdivision to construct them as sanitary measures, the state does not surrender its right to protect the public health of another political district by subsequent enactment, regulating and controlling the mode of their construction and the manner in which they shall be used. The title of the defendant corporation to the purchased lands may be unassailable, but the state cannot be held to have parted with any portion of its police power.

There is entire accord in the authorities that it is competent for the legislature not only to change and modify political districts, but to extinguish them at pleasure. This necessarily involves the power of the lawmaker to debar a municipal corporation from appropriating property to any public governmental use for which it may have been procured. If the legislature may divert property from a public use, by the exercise of its power to extinguish the public body, it does not appear why it may not restrain such use without destroy-

ing the corporation itself. The greater power must include the lesser.

If a public corporation is made an almoner of a charity, the beneficiaries cannot be deprived of it. The legislature may extinguish the corporation which was appointed to dispense it, but in that case the property would be preserved for its beneficiaries by the intervention of a court of equity in the appointment of another trustee.

Not so with property which the public corporation may acquire for purposes of government. When the corporation becomes extinct, its property must be otherwise appropriated.

It is obvious that the deposit of sewage filth in large quantities upon the territory of Millburn might be greatly inimical to the health of its inhabitants, and it was competent for the legislature to provide for their protection, by requiring the consent of its governing body as a condition precedent to the right of South Orange to appropriate said lands to the purposes for which it obtained them.

The legality of the proceedings certified is also denied, on the ground that the act under which they are being prosecuted is local and special, and, therefore, unconstitutional.

The act is entitled "An act to provide for drainage and sewerage in densely populated villages in which there is a public water supply."

The act is restricted in its provisions to villages with a population of not less than one thousand to the square mile of territorial area contained in such villages, and in which there is a public water supply. Whether the conjunction of these circumstances furnishes legal basis of classification for such legislation, applicable only to villages and not including towns and boroughs under like conditions, may be doubted, but no opinion is intended to be expressed upon this point. The system of sewerage authorized to be undertaken is a unit. The restriction upon the right to use the receptacle is inseparable from the other part of the grant, and, in the absence of Millburn's consent, there is no right in South Orange to engage in the enterprise. The authority to construct the

sewer does not arise until such consent is had, and the case stands as though the defendant corporation had passed an ordinance to do what is without its authority, and, therefore, the proceedings must be set aside.