## City of Mobile v. Gentry.

### Operating Automobile Without License.

(Decided Feb. 9, 1911. 54 South. 488.)

1. *License; Power to Levy; City.*—A city can levy a license only under and by virtue of legislative authority.

2. *Same; Automobiles.*—The provisions of section 1340, Code 1907, authorizes the levy of a license by cities on the use of automobiles.

3. *Same; Vehicles; Regulation.*—The use of private vehicles on streets is subject to regulation whether such vehicles be used and operated for hire or not.

APPEAL from Mobile City Court.

Heard before Hon. O. J. SEMMES.

From a judgment declaring void an ordinance under which R. H. Gentry was prosecuted, the City of Mobile appeals. Reversed and remanded.

The agreed statement of fact is as follows: Gentry was arrested on July 22, 1909, under a warrant charging him with the offense of violating the license ordinance of the city of Mobile, approved January 21, 1909, in that he did, subsequent to the 1st day of January,

1909, operate an automobile on the streets of the city of Mobile, without having procured a license from the city of Mobile; and it is agreed that from the day on which he was arrested Gentry did operate an automobile on the streets of Mobile without having secured a license therefor, and having paid the $7.50 fixed by the license ordinance. It was further agreed that the automobile so operated was purely a pleasure vehicle, and was not used by the defendant in or about his business, nor was it used for the carriage of goods, wares, or merchandise, nor was it used for the carriage of persons for hire, nor was it used as a public vehicle in any sense. The license ordinance is then set out and agreed to have been adopted January 1, 1909, for the year 1909.

BURWELL B. BOONE, for appellant. Section 1340, Code 1907, authorizes the city to levy a license tax on automobiles using the streets of said city, and hence, the court erred in directing a verdict for the defendant.

PILLANS, HANAW & PILLANS, for appellee. The ordinance in so far as it sought to levy a license tax on automobiles used solely as private pleasure vehicles, and not for any public use, or for the carriage of goods, wares and merchandise, is ultra vires and void. It is unnecessary to cite cases to show that a city cannot impose a license without some legislative authority, and the authority to levy a license in this case is not conferred by section 1340.—Cooley on Taxation, pp. 1101, 1138; *City of Montgomery v. West*, 149 Ala. 314; *Robinson v. Franklin*, 34 Am. Dec. 629 and note; 25 Cyc. 601. In the construction of statutes, it is a rule that a particular word governs general words and that words are known by the company they keep.—*Amos v. The State*, 73 Ala. 498; *Alabama v. Montague*, 117 Ala. 609. Following this construction it must be held that the power

to license pleasure vehicles is not given by the section above referred to.—*St. L. v. Grone*, 46 Mo. 574; *Hannibal v. Price*, 29 Mo. App. 280.

ANDERSON, J.—That the city must derive the authority to levy the license in question from the Legislature there can be no doubt. The question therefore is, Was that authority conferred by the existing municipal act of Alabama, as found in volume 1 of the Code of 1907? Article 24 of the Code (page 631) was intended primarily to authorize the regulation of a license upon business, trades, professions, etc., but an analysis of said article will disclose the fact that this authority was not necessarily confined to the subjects heretofore mentioned, but also included the right to regulate and license the use of the streets of the cities and towns. Section 1340 says: Drays, Carriages, Wagons, etc.—To regulate and license the use of carts, drays, wagons, coaches, omnibuses, and every description of carriages and vehicles kept for hire and to license and regulate the use of the streets of the town or city by persons who use vehicles or solicit or transact business thereon." It will be noted that the first part of the section relates to the business of keeping vehicles for hire, and, if this was all, there could be no doubt but that a license on automobiles or other vehicles, not kept for hire, would be unauthorized. The section, however, does not stop here, but further authorizes the municipality to license and regulate the use of the streets of the town or city by persons who use vehicles (whether for hire or not, or for business or not) or by persons who transact or solicit business "thereon" (not therein). If the Legislature intended to authorize the license and regulation only of vehicles kept for hire, this would have been fully covered by the first part of the section, and complete without

the succeeding part, which relates to the use of vehicles on the streets, whether kept for hire or not. We cannot construe the last part of the section as applying only to vehicles kept for hire or used as a means of conducting business, for to do so would be contrary both to the letter and meaning of same, and would emasculate a part of the law. It is manifest that section 1340 was intended to authorize the cities and towns to license and regulate, first, the use of vehicles kept for hire; second, to license and regulate the use of any kind of vehicles upon the streets other than those kept for hire; and, third, to license and regulate the use of the streets against trade and traffic thereon. In other words, there are three separate and distinct classifications of the objects or subjects of license and regulation, to wit, the use of vehicles kept for hire, the use upon the streets of all vehicles not kept for hire, and persons using the streets to solicit or transact business. It should also be observed that the section in question expressly gives authority to "regulate" as well as license, and to hold that the act gives no authority to "license" automobiles kept for pleasure or private use would in effect declare that the city had no express authority to regulate the use of same upon the streets. For, if the contention that the right to license did not apply to such vehicles was sound, the same reasoning would exclude the express authority to regulate. True; the right to regulate might be necessarily implied from the general charter powers, and which said implication might not include the power to license; but it is evident the Legislature gave the express power to regulate; and, while there might be reason to license the one, and not the other, there is no reason why the city should not have the right to regulate all vehicles on the streets; and it is not probable that the Legislature would give the express authority as to one

class and leave the right to regulate, under an implied authority, as to another class. The present statute gives the right to regulate as to all vehicles used upon the streets, and with the same degree of certainty gives the right to license also. "The city is required to maintain its streets. The use of vehicles upon them tends to their detriment and is a use common to all citizens. Therefore the municipal government may reasonably require those deriving a special benefit from the streets to pay reasonably for their privilege."—*Browne v. Mobile*, 122 Ala. 159, 25 South. 223. There would be little justice and equity in taxing the cabmen and draymen for the use of the streets in earning his daily bread, and at the same time permit the joy or pleasure riders and owners of automobiles to escape—a class who more greatly incumber the streets and in such a way as to not only impede the ancient method of user, but who render the crossings more dangerous to the pedestrian. The automobile was in general use when the present municipal law was enacted, and the Legislature intended to authorize the cities and towns to license and regulate the use of same. The ordinance in question was authorized by the statute, and the city court erred in giving the general charge requested by the defendant, and should have given the general charge requested by the city.

Our attention has been called in brief of counsel for the appellee to the cases of *St. Louis v. Grone & Whelan*, 46 Mo. 574, and *City of Hannibal v. Price*, 29 Mo. App. 280. In these cases the ordinance was stricken down because not authorized by the statute. It is true, also, that the statute mentioned all other vehicles after specifying certain ones, but it also, immediately thereafter, authorized the fixing of rates "for carriage of persons, and of wagonage, drayage and cartage of property," thus indicating that the Legislature was dealing

only with vehicles used for hire. "The statute in question
. is not so qualified, as it authorizes the license and regu-
lation· of vehicles, and which comprises more· than the
mere fixing of charges. The use of private vehicles .on
the streets is a. subject for regulation, whether operated
for hire or not, and the statute in question is not so
worded as to evince. a legislative intent that· it was di-
rected only to vehicles used for hire.

The judgment of the city court is reversed, and· the
cause remanded.

. Reversed and. remanded. ,

SIMPSON, McCLELLAN, MAYFIELD, SAYRE, and SOMER-
VILLE, JJ., concur.