172 So. 114
CITY OF BIRMINGHAM et al. v. HOOD–McPHERSON REALTY CO. et al. (HOOD–McPHERSON FURNITURE CO., Intervener).

6 Div. 43.

Supreme Court of Alabama.

Jan. 14, 1937.

W. J. Wynn, Clarence Mullins, Mullins, Deramus & Stuart, Thos. E. Skinner, and W. B. Harrison, all of Birmingham, for appellants.

Wm. S. Pritchard and David R. Solomon, both of Birmingham, for appellees.

THOMAS, Justice.

The suit was for injunction to abate a nuisance resulting in personal injury to abutting property owners.

It is averred in the bill as amended that the realty company is the owner and that the furniture company is the tenant of the property located on Fourth Avenue North, in the City of Birmingham; that the block of Fourth Avenue North, on which said property is located, is included in the parking meter zone created by the ordinance exhibited and challenged as illegal; that respondent meter company has inserted a series of metal posts in the sidewalks in front of this property, which was done in anticipation of the passage of the ordinance creating "said parking meter zone." It is averred that it is necessary to have a free and unobstructed flow of traffic to and from said store and business to the street; that the permanent structures to constitute the parking meters will constitute obstructions or nuisances on the street and will interfere with pedestrian traffic and the free flow of traffic alongside, to and from said building; that the erection of the parking meters *amounts to a taking or injury to complainant's respective rights to said property and violates the due process clause of the Constitution of the United States and also provisions of the Constitution of Alabama.*

It is further averred that the installation of the parking meters, as photostatically exhibited in the record, is a plan or scheme on the part of the municipality .to *rent spaces for parking automobiles in the streets of the city to obtain revenue* for the city; that the erection and operation of said meters *have no proper relation* to the regulation of parking in said block and upon streets located in what is called the parking meter zone; that parking on said streets has been regulated for years, by the usual designations or marks and signs indicating parking spaces and limitations being marked and erected on the sidewalks.

It is averred that in the passage of the ordinance for the parking meter zone the respondent commission used language in the ordinance to make it appear that said acts—the erection and operation of said meters—were under the police powers of the municipality, when, in fact, they were being installed for the purpose of obtaining revenue. It is thus averred:

"In short, the City seeks to convert the said avenue into a parking lot, and charge the public a fee for the use of the same; while in the adjoining blocks to that in which complainant's property is located, no fee will be charged. The effect of charging the parking fee for the privilege of parking in the block upon which complainant's property is located will be to divert traffic and travel from said block to adjoining or neighboring blocks where no fee is charged, and where the public may have the privilege of using the streets of Birmingham without payment of a fee for the use or hire thereof. * * *

"Complainant specifically states and charges the facts to be that the language and wording of the said ordinance makes it apparent upon its face that it is merely a subterfuge * * * in this:

"The City of Birmingham now has its streets zoned, and parking spaces marked off for automobiles. Said spaces further have periods of limitation for parking plainly stated thereon. The traffic officer in the block concerned marks the automobiles from time to time, if and when the prescribed time has been overstayed they are 'tagged,' and the owner required to report to and usually pay a fine in the 'traffic court' of Birmingham. The purported meters bear no true relation to either the marking or zoning of the streets for parking purposes, nor the time limit prescribed therein.

"Their sole and only purpose is to exact a fee on an hour or minute basis of the motorist for the use of the street, namely, to raise revenue for the use of the City of Birmingham by renting out the public streets and thoroughfares for parking purposes."

The ordinance exhibited is in several sections, among them: (a) and (b), defining the locus in quo; (c) excepting from the provisions of sections (a) and (b) "any practicing licensed physician or surgeon (not including dentists and dental surgeons), using an automobile bearing the insignia of the medical fraternity"; (1) Establishing parking meter zones, viz.: "Both sides of 18th Street, North, 19th Street, North, 20th Street, North, and 21st Street, North, between 1st Avenue and 4th Ave-

nue; both sides of 1st Avenue, North, 2nd Avenue, North, 3rd Avenue, North, and 4th Avenue, North, between 18th and 21st Streets; and in said zones and such other parking meter zones as may be hereafter created by ordinances of the City of Birmingham, the Commissioner of Public Safety shall cause to be installed parking meters, and shall cause parking meter spaces to be designated in accordance with the provisions of this ordinance"; section (2) providing that "The Commissioner of Public Safety is hereby authorized to cause to be installed or placed, parking meters in such parking meter zones hereby created or to be created by other ordinances of the City of Birmingham. Such parking meters shall be placed adjacent to the curb, alongside of, or next to the individual parking places to be designated as hereinafter provided. Each of said parking meters shall be so set as to show on the dial of said meter that the parking space alongside of the same is, or is not in legal use. Each of said meters installed shall indicate by a proper legend the legal parking time established by the City, and when operated shall indicate on and by its dial and pointer the duration of the period of legal parking, and on the expiration of such period shall indicate illegal or overtime parking. Each of said meters shall be so set as to show legal parking upon the deposit of a five cent coin of the United States therein, and setting the meter in motion by turning the crank thereon as far to the right as the same will turn, for a period of time conforming to the parking limit now or hereafter provided by the ordinances of the City of Birmingham; and each meter, upon the deposit of said coin and setting the meter in operation shall continue in operation so as to clearly show the periods of legal as well as illegal parking"; (3) providing for setting the meters, and making it "unlawful for any person to park or leave any vehicle in any such parking space without having deposited said coin and setting said meter in motion as hereinabove provided"; (4) declaring it to "be unlawful for any person to permit a vehicle to remain or be placed in any parking space alongside of or next to which any parking meter is placed while said meter is showing that such vehicle shall have been already parked beyond the period of time fixed by the ordinances of the City of Birmingham for such parking space"; section (5) prescribing the arrangement or manner of parking; (6) re-

quiring the Commissioner of Public Safety to place lines or marks on the curb or on the street about or alongside of each parking meter, to designate the parking space for which said meter is to be used; (7) making it "unlawful to deposit or cause to be deposited in any parking meter, any slug, device or substitute for a five cent coin of the United States"; (8) declaring it "unlawful for any person to deface, injure, tamper with, open or willfully break, destroy or impair the usefulness of any parking meter installed under the terms of this ordinance"; and section (9) providing: "The five cent coins required to be deposited as provided herein are levied under the police power of the City of Birmingham to regulate and control traffic upon the public streets, and to cover the costs of such regulation and control, and the same shall be used for no other purpose."

The several answers set out the resolution authorizing the purchase of 662 parking meters from respondent parking meter company, the agreement between the City of Birmingham and the respondent company covering the purchase, the ordinance creating said parking meter zone and authorizing the installation of parking meters, which was passed and authorized by the City Commission of the City of Birmingham, acting under the police power of said city; that installation of said meters was proposed for a portion of the most congested business section of said city; describing the zone created and the character of parking meters, when, and how to be installed. The answers deny that the same will create obstructions on the streets, or interfere with complainant's rights, but, to the contrary, will materially aid in the enforcement of parking regulations and relieve traffic congestion and hazards, and keep that zone open for "free use and free passage"; deny that the installation of said parking meters will in any wise violate any right of the complainant, or intervener, under the Constitutions, Federal or State. It is further averred that the ordinance was passed in good faith to obtain a modern signaling device and modern method or system for the regulation, control, limitation, and prohibition of parking similar to those now in use in many of the leading cities.

The meter is exhibited and sent to this court for inspection and demonstration of its use by depositing 5 cents and pressing the lever, as indicated in the evidence.

■ When complainant's insistences are reduced, they are, in effect, that its property is being taken without due process of law under the ordinance challenged and its administration shown by the evidence. That is to say, the valuable personal and property rights appurtenant to and necessary in the ownership of lands abutting on a highway are violated by the physical obstructions provided for and permitted on the street by the ordinance alongside of complainant's property contrary to the well-considered and adjudicated cases (First National Bank v. Tyson, 133 Ala. 459, 32 So. 144, 59 L.R.A. 399, 91 Am.St.Rep. 46); that complainant's right of property and the right use thereof are denied, in that the free and unobstructed use of ingress and egress from the street to the sidewalk and its property is denied to complainant without the payment of the charge fixed by the ordinance; that those of the general public desiring to park and go to complainant's place of business are denied such privilege by the obstruction of cars parked there for compensation, or are denied for failure of payment of the required price for such parking privilege; and that the ordinance permits an unnecessary and unlawful burden on adjacent property owners, in the exercise of the police power of government—that is, a continuing indirect tax imposed upon the use of the street which is not a lawful exercise of the taxing or police power of municipal government. These questions will be tested by the due exercise of the police power of municipal government in the regulation of traffic on public highways and in the imposition of taxation necessary and incident thereto. Standard Chemical & Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383, L.R. A.1918C, 522; Van Hook v. City of Selma, 70 Ala. 361, 363, 45 Am.Rep. 85.

At this juncture, we may be reminded of the nature, extent, and trust imposed in the dedication and maintenance of public highways reasonably freed of permanent obstructions.

The original deed from "Elyton Land Company To Mayor & Alderman, B'ham" is exhibited. It is of date of July 5, 1877, and defines the use and trust under the law then obtaining. It conveyed all the "streets, avenues and alleys within the corporate limits of said City of Birmingham, according to the plan of said city as established and laid out by the said 'Elyton Land Company' and recognized and adopted by the said 'Mayor & Alderman of Birmingham,'" specificall; describing the locus in quo, followed by the habendum clause, which reads: "To have and to hold the above described and dedicated streets, avenues and alleys as aforesaid with appurtenances to the said Mayor and Alderman of Birmingham to be kept by said 'Mayor & Alderman of Birmingham' for the benefit and use of the public, and it is expressly stipulated that said streets, avenues and alleys shall not be used for any private or individual purposes except with the consent of the 'Elyton Land Company.' The intention of this deed is to confirm the dedication heretofore made by the 'Elyton Land Company' to the 'Mayor and Alderman of Birmingham' of the said streets, alleys and avenues (with the exception aforesaid) to be kept by said 'Mayor and Alderman of Birmingham' as the streets, avenues and alleys of the city and used alone as such for the benefit of the public and the said 'Mayor and Alderman of Birmingham' accepts the trust as intended and agrees to carry out the trust according to the above intent and purpose and not otherwise. And it is further understood that this conveyance shall not be construed to convey said streets, alleys and avenues, except to be kept and used alone as such for the benefit of the public, and for no other use and benefit whatever without the consent of said 'Elyton Land Company.'" Thus were the public highways dedicated and accepted for the purposes declared by the parties.

■ The provisions of sections 220 and 228 of the Constitution define legislative power over the subject-matter; and it has been stated generally that "the Legislature has the inherent power, in the absence of constitutional restriction, to control the highways of the state in or out of the limits of a municipal corporation." Ryan, Treas., v. Goodrich & Crinkley, 199 Ala. 642, 75 So. 17; Wiggins v. Skeggs et al., 171 Ala. 492, 54 So. 756; State ex rel. City of Mobile v. Board of R. & R. Com'rs Mobile County, 180 Ala. 489, 61 So. 368.

There have been many statutes enacted providing for the right exercise of this inherent police power of government, and, in turn, a variety of decisions dealing with the same. For example, statutes for the vacation of public streets or highways were subjects of discussion in State ex rel. Attorney General v. Louisville & N. R. R. Co. et al., 158 Ala. 208, 48 So. 391; Stollenwerck et al. v. Greil et al., 205 Ala. 217, 87 So. 338; Crosby v. Baldwin County, 227

Ala. 122, 148 So. 814; section 2071 of the Code, providing for the vacation of a street upon completion of a viaduct, bridge, etc.; section 2238 authorizing the vacation of a portion of streets for the erection of buildings; and the act of 1935 (Gen.Acts 1935, p. 86, § 3), authorizing any city, for the purpose of aiding and cooperating in the planning, construction, and operation of housing projects, to "enter into any agreement to open, close, pave, install, or change the grade of streets," etc. Other statutes touching this subject are: Those empowering the court of county commissioners to regulate and fix the rates of toll on all toll bridges, ferries, and causeways, sections 6446, 6450, Code; that authorizing the State Highway Commission to abandon and discontinue (with the approval of the municipality), "any portion of a State Highway, or street on a state highway route * * * crossing the tracks or right of way of any railroad," etc., Act of 1935, Gen.Acts 1935, p. 679; and that prohibiting parking upon a paved highway, section 1397(72) of the Code 1928, Acts 1927, p. 375.

Many acts of the Legislature confer on cities the power of regulation of streets by means of signaling devices, Gen.Acts 1927, p. 377, Code 1928, § 1397(79), subsec. (d); the power to regulate the running of trains, etc., and prohibit the standing of vehicles, engines, or automobiles, etc., on streets, Code, § 2308; the power to regulate or prohibit parking of vehicles except as indicated, Gen.Acts 1927, p. 377, Code, § 1397(79), subsec. (e); to control and regulate the use of the streets "for any and all purposes," section 2016, Code 1928; and to license and regulate the use of the streets of cities by persons who use vehicles or solicit or transact business thereon, section 2163, Code 1928; City of Mobile v. Farrell et al., 229 Ala. 582, 158 So. 539; City of Mobile v. Gentry, 170 Ala. 234, 54 So. 488, cited in 37 L.R.A.(N.S.) page 440, note. These statutes are not here for consideration or decision of the question presented.

■ The City of Birmingham has broader police powers than the smaller cities of the state, in that the Legislature conferred upon that municipality the full police powers possessed by the state of Alabama. Gen.Acts 1915, p. 296, § 6; Mitchell v. City of Birmingham, 222 Ala. 389, 133 So. 13; Fitts v. Commission of City of Birmingham et al., 224 Ala. 600, 141 So. 354.

■ This extended power cannot, however, change the terms of the grant dealt with, the trust imposed for the benefit of the general public, or ignore the personal and property rights under the Constitutions to the properties in question. This will be illustrated by the exercise of police powers that have been upheld by courts under given facts, the Constitution of the United States, and Constitutions of several of the states.

Adverting to examples of the exercise of police powers in several jurisdictions, it has been held that such power extends: To the regulation of slaughtering of cattle and market places (Butchers' Union Slaughter House, etc., Co. v. Crescent City Live Stock Landing and Slaughter House Company, 111 U.S. 746, 4 S.Ct. 652, 28 L. Ed. 585; Petz et al. v. City of Detroit, 95 Mich. 169, 54 N.W. 644); to the regulation of the business of mining (Wolf v. Smith, 149 Ala. 457, 42 So. 824, 9 L.R.A. [N.S.] 338); to prohibit combinations between connecting lines of railways (Louisville & Nashville Railroad Company v. Commonwealth of Kentucky et al., 161 U.S. 677, 700, 16 S.Ct. 714, 40 L.Ed. 849); to liability for fire caused by engines (St. Louis & San Francisco Railway Company v. Mathews, 165 U.S. 1, 2, 17 S.Ct. 243, 41 L.Ed. 611); to prescribe the manner for maintenance of railroad crossings (Chicago, B. & Q. R. Co. v. State of Nebraska ex rel. City of Omaha, 170 U.S. 57, 18 S. Ct. 513, 42 L.Ed. 948); to regulate the killing and exportation of game (Magner v. People of the State of Illinois, 97 Ill. 320–337); to the regulation of telephone rates (Hockett v. State, 105 Ind. 250, 5 N. E. 178, 55 Am.Rep. 201); regulation of the pressure of natural gas transported (Jamieson v. Indiana Natural Gas & Oil Company et al., 128 Ind. 555, 28 N.E. 76, 12 L.R.A. 656); to require street railways to sprinkle their tracks (State v. Canal & Claiborne Railroad Co., 50 La.Ann. 1189, 1205, 24 So. 265, 271, 56 L.R.A. 287); to reasonable rules as to quarantine (Davock et al. v. Moore, 105 Mich. 120, 133, 63 N.W. 424, 28 L.R.A. 788); to regulate the construction of sewers (Millburn v. South Orange, 55 N.J.Law, 254, 26 A. 75); to require cattle guards at crossings (Birmingham Mineral Railroad Co. v. Parsons, 100 Ala. 662, 13 So. 602, 27 L.R.A. 263, 46 Am.St.Rep. 92); to require foreign corporations to appoint resident agent (American Union Tel. Co. v. Western Union Tel. Co., 67 Ala.

26, 42 Am.Rep. 90); to regulate traffic about railroad depots (Ex parte Bizzell, 112 Ala. 210, 21 So. 371); to prescribe lands that may be used for burial purposes (Newark v. Watson, 56 N.J.Law, 667, 673, 29 A. 487, 24 L.R.A. 843); to regulate the storing of powder (Davenport & Morris v. Richmond City, 81 Va. 636, 642, 59 Am. Rep. 694); to regulate the sale of seed cotton (Davis v. State, 68 Ala. 58, 44 Am.Rep. 128); sale of milk (Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 169 So. 295; Mayor and Aldermen of Birmingham v. Goldstein, 151 Ala. 473, 44 So. 113, 12 L.R.A.(N.S.) 568, 125 Am.St.Rep. 33; Ridgeway v. City of Bessemer, 9 Ala.App. 470, 64 So. 189); to require an owner to keep his sidewalk free of ice and snow (Village of Carthage v. Frederick, 122 N.Y. 268, 277, 25 N.E. 480, 10 L.R.A. 178, 19 Am.St.Rep. 497); to prevent stock from running at large (Folmar v. Curtis, 86 Ala. 354, 5 So. 678); to regulate and tax bankrupt sales (State v. Kartus, 230 Ala. 352, 162 So. 533, 101 A.L.R. 1336); to license occupations and businesses within the city and the police jurisdiction of the municipality (Van Hook v. City of Selma, 70 Ala. 361, 45 Am.Rep. 85; Standard Chemical & Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383, L.R.A.1918C, 522; American Bakeries Co. et al. v. City of Huntsville, 232 Ala. 612, 168 So. 880; White v. City of Decatur, 225 Ala. 646, 144 So. 873; Town of Guntersville v. Wright, 223 Ala. 349, 135 So. 634). See, also, for the regulation of mines, watersheds, milk sheds, etc., Franklin v. State ex rel. Alabama State Milk Control Board, supra; and for the classification and tax on transient vaudeville shows, Hale v. State, 217 Ala. 403, 116 So. 369, 58 A.L.R. 1333, and authorities as to the exercise of police power collected in several opinions in State v. Goldstein, 207 Ala. 569, 574–585, 93 So. 308. Not one of the statutes or ordinances construed in the foregoing decisions is of the nature and of as far-reaching effect as the one before us.

In Leary v. Adams et al., 226 Ala. 472, 474, 147 So. 391, 392, the zoning ordinances were upheld, and the following observation made:

"The authority for zoning laws is found within the bounds of the police power, asserted for the public welfare, and it has been well said that the line in this field which separates the legitimate from the illegitimate assumption of power is incapable of precise delimitation, varying with circumstances and conditions. The leading case on the subject, and one which speaks with final authority concerning the due process clause of the Fourteenth Amendment to our Federal Constitution, is that of Village of Euclid, Ohio, v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 118, 71 L.Ed. 303, 54 A.L.R. 1016.

"The cases, of course, recognize the rule that the lawmaking authorities may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities; that governmental interference by zoning ordinances with such use, is not unlimited, and such restrictions should bear some substantial relation to the public health, safety, morals, or general welfare."

The opinion in McIntosh et al. v. Moody et al., 228 Ala. 165, 167, 153 So. 182, 183, in discussing the disregard of trust of dedication of public highways and their unlawful obstruction, approved the following text from Mr. Dillon: " 'Streets and public squares are dedicated or acquired for the *public* use, not alone for that of the people of the city, the corporation being the mere trustee for the public; that erections by private persons on property thus dedicated or acquired, cannot be authorized by the original proprietor, or by the city corporation, and can be authorized only by the legislature; and that unauthorized erections or obstructions thereon are public nuisances.' 2 Dillon on Municipal Corporations, § 675 [4th Ed.]; Webb v. City of Demopolis, 95 Ala. 116, 13 So. 289, 21 L.R.A. 62; Reed v. Mayor & Aldermen of Birmingham, 92 Ala. 339, 348, 349, 9 So. 161; Olive v. State, 86 Ala. 88, 5 So. 653, 4 L.R.A. 33."

The unlawful abandonment of the right of a public park was the subject of Douglass v. City Council of Montgomery, 118 Ala. 599, 24 So. 745, 43 L.R.A. 376.

It has been declared that any obstruction in a highway or street, materially tending to the annoyance of persons living near it, or which renders the right of passage on or along such highway or street more difficult, hazardous, or less commodious, is a nuisance. State of Alabama v. Mayor and Aldermen of Mobile, 5 Port. 279, 30 Am.Dec. 564; Harbison v. Campbell, 178 Ala. 243, 59 So. 207; United States v. Lockhart (D.C.) 33 F.(2d) 597, 600; Costello v. State, 108 Ala. 45, 52, 18 So. 820, 35 L.R.A. 303. "Anything that worketh hurt, inconvenience, or damage is a nui-

sance," is a statement running through the cases. City of Troy v. Watkins, 201 Ala. 274, 78 So. 50, 51.

■ Because of the necessities of the case, it is not every obstruction to a highway, although it works inconvenience to the public, that is illegal—such as temporary obstructions; that is, not illegal per se, and only becomes a nuisance from unnecessary delay in its removal. In such case a question of fact and administration is to be decided. Costello v. State, 108 Ala. 45, 18 So. 820, 35 L.R.A. 303; Walker v. John Smith, T., 199 Ala. 514, 74 So. 451.

■ A permanent obstruction in a street in the absence of due authority is a public nuisance. Densmore v. City of Birmingham, 223 Ala. 210, 135 So. 320.

See Utilities Production Corporation v. Carter Oil Co. (C.C.A.) 72 F.(2d) 655, 659; 61 A.L.R. notes 1055 and 1059.

The rule stated by Mr. Freeman was approved in Costello v. State, 108 Ala. 45, 49, 50, 52, 18 So. 820, 821, 35 L.R.A. 303, where it was said:

"Judge Ruffin, a distinguished jurist, said, in State v. Edens, 85 N.C. [522], 526: 'Any permanent obstruction to a public highway, such as would be caused by the erection of a fence or building thereon, is, of itself, a nuisance, though it should not operate as an actual obstacle to travel, or work a positive inconvenience to any one. It is an encroachment upon a public right, and, as such, is not permitted by the law to be done with impunity.'

"Confusion of ideas upon this subject grows out of the failure to properly distinguish between street obstructions which are per se unlawful, and capable of working public detriment, and those which are not, in themselves, unlawful, but may be so, by virtue of circumstances necessary to be shown in evidence in order to establish the criminality of the act. There are classes of highway obstructions which may create public inconvenience, and yet are not unlawful. Mr. Freeman also makes these appear very clearly. After laying down the principle above credited to him, he proceeds, in the same annotation, to say: 'Temporary obstruction and partial occupation of streets may, however, be justified on the ground of necessity. The street may be so obstructed by placing thereon materials for building or repairing, if it be done in such a way as to occasion the least inconvenience to the public, and the

obstruction be not continued for an unreasonable length of time. So, too, a private person carrying on business may occupy a portion of the street for a reasonable length of time for the necessary purpose of receiving and delivering his goods. A street may also be used for the purpose of moving a building from one place to another, provided it be done in a reasonable and judicious manner. Streets may be lawfully used for other purposes than the accommodation of the traveling public, provided such use be not inconsistent with the reasonable free passage of travelers over them. Slight inconveniences and occasional interruptions in the use of a street, which are temporary and reasonable, are not illegal merely because the public may not, for the time being, have the full use of the highway. * * * If a person finds it necessary to obstruct a public street, he must see to it that the inconvenience to the traveling public be as slight as possible, and that it be allowed to continue for a reasonable time only. And a reasonable time is such as is necessary, in the ordinary course of business, for its removal. A teamster has no right to keep his team standing in the street in such a manner as to impede travel for an unnecessary length of time. If his wagon breaks down, and he is compelled to throw his goods upon the street, he must remove them out of the way in a reasonable time.' * * *

"It is not so much the improper manner of exercising the right which constitutes the criminal offense, as the inconvenience to the public which results from that manner. Judge Ruffin, in his opinion referred to, supra, after stating the principle we quoted, in reference to permanent structures, drew the distinction between the two classes of cases, as follows: 'But the very object of a highway is that it may be used; and, though travel be its primary use, it still may be put to other reasonable uses; and whether a particular use of it, which does not of itself amount to a nuisance, is reasonable or not, is a question of fact to be judged of by the jury according to the circumstances of the case. Unlike the case of a permanent obstruction just referred to, it is not the manner of using the highway which constitutes the nuisance, but the inconvenience to the public which proceeds from it; and, unless such inconvenience really be its consequence, there is no offense committed.' Nothing can better settle the principle than this emanation from so distinguished a judge.

"Our own adjudications support our conclusion: State v. Mobile, 5 Port.(Ala.) 279 [30 Am.Dec. 564]; Hoole v. Attorney General, 22 Ala. 190; City Council of Montgomery v. Wright, 72 Ala. 411 [47 Am.Rep. 422]; Webb v. Demopolis, 95 Ala. 116, 13 So. 289, 21 L.R.A. 62." See State v. Edens, 85 N.C. 522, 526.

Such are the rules as frequently declared in this and other jurisdictions.

The obstructions authorized by the ordinance in question are in nature sui generis, affecting deleteriously, and running with the land as to egress and ingress and the right of parking, a material incident to this right. To like effect is the superimposed burden of an insidious, indirect tax or charge on the use, authorized and imposed upon the right to park and thus upon the land within the defined areas.

█ Let us then inquire of the taxing power. It is established: (1) That the power to tax is essentially an attribute of sovereignty which must be exercised within constitutional limitations without restraint or judicial supervision; (2) that municipal corporations may even license businesses, trades, and professions to the end of a twofold purpose (a) in the exercise of police power, (b) as well as for the purpose of raising revenue (section 2154, Code); and (3) that the power to tax cannot be employed to "embarrass and destroy useful and harmless occupations, that are essential to the prosperity of the people, and thus defeat the very purpose for which the power is conferred." American Bakeries Co. et al. v. City of Huntsville, 232 Ala. 612, 168 So. 880, 882; Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 169 So. 295; State v. Kartus, 230 Ala. 352, 162 So. 533, 101 A.L.R. 1336; Alabama Warehousing Co. v. State, 227 Ala. 258, 149 So. 843; Woco Pep Co. of Montgomery v. Butler, Chairman, et al., 225 Ala. 256, 142 So. 509; Hale v. State, 217 Ala. 403, 116 So. 369, 58 A.L.R. 1333; Western Union Telegraph Co. v. City of Decatur, 202 Ala. 593, 81 So. 205; Id., 16 Ala.App. 679, 81 So. 199; Standard Chemical & Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383, L.R.A.1918C, 522.

█ In the leading case of Van Hook v. City of Selma, 70 Ala. 361, 364, 365, 45 Am.Rep. 85, it is declared, as to the power to tax as an incident to the exercise of police power, that "in the case of useful trades and employments, and a fortiori in other cases, that, as an exercise of police

power merely, the amount exacted for a license, though designed for regulation and not for revenue, is not to be confined to the expense of issuing it; but that a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation, at the place where it is licensed. For this purpose, the services of officers may be required, and incidental expenses may be otherwise incurred in the faithful enforcement of such police inspection or superintendence." This is the rule that obtains in this jurisdiction. Standard Chemical & Oil Co. v. City of Troy, supra.

It must be admitted that the automobile has introduced into police law many questions affecting the lives, health, happiness, personal and property rights, and general welfare of the people, all of which have to be considered, safeguarded, and defined according to the particular facts entering into each case; hence the necessity for a careful consideration and right decision of the instant ordinance as affecting the far-reaching rights in the premises. Frost & Frost Trucking Co. v. Railroad Commission of State of California, 271 U.S. 583, 46 S. Ct. 605, 70 L.Ed. 1101, 1105, 47 A.L.R. 457.

The interests affected by this ordinance are threefold: (1) That of the general public in the right of an unobstructed use of the highways in restricted districts and within the grant of such highways; (2) the interest of the municipality and its declared rights, with certain recognized limitations, to regulate traffic under the police power of government, and, while regulating, to tax to raise revenue necessary to that policing (Standard Chemical & Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383, L.R.A.1918C, 522; Van Hook v. City of Selma, 70 Ala. 361, 45 Am.Rep. 85); and (3) special interests, as those of the adjacent property owner holding the fee or leaschold in the use of his property.

█ It has been observed that by virtue of legislative authority under sections 220 and 228 of the Constitution the city has the right to reasonably authorize or prohibit the use of the street for the operation of public or private enterprise. City of Montgomery et al. v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117; Cloe, Com'r of Public Safety, v. State ex rel. Hale, 209 Ala. 544, 96 So. 704; McLendon et al. v. Boyles Transit Co., 210 Ala. 529, 98 So. 581; Alabama Traction Co. et al. v. Selma Trust & Savings Bank, 213 Ala. 269, 104 So. 517;

Birmingham Electric Co. v. Allen et al., 217 Ala. 607, 117 So. 199; City of Mobile v. Farrell et al., 229 Ala. 582, 158 So. 539. Such is not the case presented by the ordinance before us. It presents a case for the right application, or to be tested by the far-reaching powers sought to be exercised: (1) The right of a due encroachment of the street; (2) the laying upon that property a burden of taxation incident to the exercise of such power as affecting egress and ingress and the parking of automobiles alongside for rent or hire; and (3) the provision that this permanent income will accrue to the city or other parties in interest other than the owner of the fee or lease.

▮ We have indicated that the municipality holds the locus in quo, not only for the municipality and its citizens, but *in trust for the public at large,* whose rights are not dependent upon acts of omission or commission of the city—that is, that nothing done or omitted to be done in the allowance of the unlawful obstructions on the street, which interfere with the use within the dedication of that highway, will estop the public or those with a special interest from having the same removed as a nuisance. Webb v. City of Demopolis, 95 Ala. 116, 13 So. 289, 21 L.R.A. 62; McIntosh et al. v. Moody et al., 228 Ala. 165, 153 So. 182; 2 Dillon on Municipal Corporations (4th Ed.) § 669.

▮ The right of access includes passage, accessibility, and stopping briefly and reasonably in front of premises without unnecessarily inconveniencing the passage of the general public (44 Corpus Juris, pp. 943, 944); and this right is applicable, not only to the passenger along the street or one desiring to approach and enter the premises, but also to the owner of those premises. The latter has the right to have his family, guests, or customers come and go within reasonable limitations and without the exaction of a fee or compensation. The right of egress and ingress is necessarily burdened with the right, within reasonable limitations, of parking a vehicle or car. The owner has the right to come and go, and park his vehicle alongside of his property (within reasonable limitations), without the exaction or payment of a tax or fee to the municipality, or to have his property defaced by superimposed obstructions, barriers, or parking meters placed alongside.

▮ The submission was upon affidavits, correspondence, depositions, and oral testimony, which tend to show the exercise of judgment, pro and con, as to a proposed public benefit, and that the interested parties acted, as did the governing bodies of the city. They need no acquaintance with the charge of bad faith in the premises. Douglass v. City Council of Montgomery, 118 Ala. 599, 609, 24 So. 745, 746, 747, 43 L.R.A. 376. However, we are of the opinion that the majority adopting the ordinance was mistaken as to the law and the necessities of the case. We hold that the ordinance enacted and sought to be enforced was an unauthorized abandonment of the terms of the Elyton Land Company's deed of dedication; that its execution deprives complainant of its property without due process; and that its administration was and is an unauthorized exercise of the taxing power.

▮ The complainant's pleading and evidence bring the bill within the rule of cases involving an injured property owner, who may invoke injunctive relief for his or its protection. City of Troy v. Watkins, 201 Ala. 274, 78 So. 50; First National Bank of Montgomery v. Tyson, 144 Ala. 457, 39 So. 560; Douglass v. City Council of Montgomery, supra; Jordan v. McLeod, 220 Ala. 672, 127 So. 160; McIntosh et al. v. Moody et al., 228 Ala. 165, 153 So. 182.

The decree of the circuit court is therefore affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.