174 So. 514

### STATE ex rel. TURNER et al. v. BAUMHAUER et al., Com'rs.

#### I Div. 952.

Supreme Court of Alabama.

May 13, 1937.

Rehearing Denied June 3, 1937.

C. R. Shannon, of Mobile, for appellants.
Harry Seale, of Mobile, for appellees.

THOMAS, Justice.

The petition was for mandamus denied by the judge of the circuit court. The purpose was to require the commission of the city of Mobile and its building and license inspectors to issue a building permit for the construction and operation of a three-pump gasoline and oil filling station on the premises described in the petition.

The cause was heard on oral testimony before the court, and the court's finding is supported by the presumption that obtains. Hodge v. Joy, 207 Ala. 198, 92 So. 171; Ray v. Watkins, 203 Ala. 683, 85 So.

25; Andrews v. Grey, 199 Ala. 152, 74 So. 62.

The decree entered, and from which the appeal was taken, is: "The Court finds the facts to be that on June 26, 1934, the property described in the petition was then used for property of an unconforming use but was discontinued subsequent thereto as provided in Sub-Section 8, Section 2 of the Zoning Ordinance of the City of Mobile. Had the tenant then in possession of the property continued until now, the Court would hold petitioner had a right to change it to a filling station, but having discontinued the use of premises for purposes leased for it lapsed to the highest classification of 'A' and cannot again be lowered."

The photograph offered in evidence of the physical condition of the land on July 28, 1936, is not embraced in the bill of exceptions or sent to this court for inspection. The rule that obtains in the case of omission of material evidence (Woodrow v. Hawving, 105 Ala. 240, 16 So. 720; Wood v. Wood, 119 Ala. 183, 24 So. 841; Hamrick v. Albertville, 228 Ala. 666, 155 So. 87; Taylor v. Hoffman, 231 Ala. 39, 163 So. 339) will not be applied, for that the "agreement and stipulations of counsel recites, 'Exhibit F' is a photograph and affidavit showing said photograph taken February 28, 1936, by Erik Overbey, showing premises described in petition, occupied by Carnival Shows on said date." This was of the date of the adoption of the ordinance—June 26, 1934.

The evidence does not show a continuous occupancy by carnival shows on date of application for permit and license or to and at the time of trial. The evidence does show the use of the lot from time to time by all kinds of amusements—circuses, dog and pony shows, miniature automobile race track, scout meetings, scout jambories, for playing of ball, fortune tellers, fruit and vegetable vendors, and for a portion of the time the lot was vacant without buildings thereon.

As to the evidence of occupancy of the fruit vender at the time of petition for license, there is tendency of conflict in the evidence; that is, as to whether such vender was on the property or on the space between the sidewalk and street pavement, or on the sidewalk in front of the property. The foregoing will suffice as to the tendency of the evidence.

The ordinance is shown by the "agreement-stipulation" of counsel. "It is further stipulated and agreed that said Zon-

ing Law provides as follows: Use, Non-Conforming: A building or premises occupied by a use that does not conform with the regulations of the use district in which it is situated.

"Non-Conforming Uses: The lawful actual use of building or premises existing at the time of the adoption of this ordinance may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the said building and premises.

"A non-conforming use, except in case of billboards, may be changed to a use of the same or higher classification, according to the provisions of this ordinance.

"Whenever a district shall be hereafter changed, any then existing non-conforming use in such changed district may be continued or changed to a use of a similar or higher classification, provided all other regulations governing the new use are complied with. Subject to the provisions of the preceding paragraph, whenever a non-conforming use of a building or premises has been discontinued, or changed to a higher classification or to a conforming use, such use shall not thereafter be changed to a use of a lower classification.

"Section 14 of said Zoning Ordinance provides for amendments to said Ordinance after public hearing on petition for amendment."

The validity of proper zoning ordinances has been upheld by the courts. City of Birmingham v. Hood-McPherson Realty Co., 233 Ala. 352, 172 So. 114, 120; Leary v. Adams, 226 Ala. 472, 147 So. 391.

This ordinance was a proper exercise of the police power. In Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 118, 71 L.Ed. 303, 54 A.L.R. 1016, it is declared that the exclusion from residential districts by zoning ordinances of business and trade of every sort cannot be said to be so clearly arbitrary and unreasonable and to have such substantial relation to public health, safety, and general welfare as not to be within the police power.

The subject is well concluded by Mr. Justice Sutherland, as follows:

"while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the meaning, but to the application of constitutional principles, statutes and ordinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall.

"The ordinance now under review, and all similar laws and regulations must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities. In solving doubts, the maxim 'sic utere tuo ut alienum non laedas,' which lies at the foundation of so much of the common law of nuisances, ordinarily will furnish a fairly helpful clew. And the law of nuisances, likewise, may be consulted, not for the purpose of controlling, but for the helpful aid of its analogies in the process of ascertaining the scope of, the power. Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality.

"Sturges v. Bridgman, L.R. 11 Ch.Div. 852, 865. A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. Radice v. New York, 264 U.S. 292, 294, 44 S.Ct. 325, 68 L.Ed. 690 [694]." City of Birmingham v. Hood-McPherson Realty Co., 233 Ala. 352, 172 So. 114, 120.

When all of the evidence is carefully considered and under the rules that obtain, we find no error in the conclusion reached by the lower court and embraced in the judgment rendered.

The judgment of the lower court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.